FILED

DEC 09 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-14-1021-TaDKi |
| | CC-14-1041-TaDKi |
| ZAFAR DAVID KHAN, | CC-14-1062-TaDKi |
| Debtor. | Bk. No. 2:13-bk-19713-WB |
| ZAFAR DAVID KHAN, | Adv. No. 2:13-ap-01962-WB |
| Appellant, | |
| v. | |
| KENNETH BARTON; THOMAS BURKE; NANCY K. CURRY, Chapter 13 Trustee,* | |
| Appellees. | |
| In re: | BAP Nos. CC-14-1020-TaDKi |
| | CC-14-1060-TaDKi |
| TERRANCE ALEXANDER TOMKOW, | CC-14-1061-TaDKi |
| Debtor. | Bk. No. 2:13-bk-19712-WB |
| TERRANCE ALEXANDER TOMKOW, | Adv. No. 2:13-ap-01989-WB |
| Appellant, | |
| v. | **O P I N I O N** |
| KENNETH BARTON; THOMAS BURKE; NANCY K. CURRY, Chapter 13 Trustee,* | |
| Appellees. | |

Argued and Submitted on October 23, 2014
at Malibu, California

---

* Appellees Thomas Burke and Nancy K. Curry did not file briefs and did not participate in these appeals.

Filed – December 9, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia W. Brand, Bankruptcy Judge, Presiding

Appearances: Lewis R. Landau of Horgan, Rosen, Beckham & Coren, LLP for appellants Zafar David Khan and Terrance Alexander Tomkow; Patrick C. McGarrigle of McGarrigle, Kenney & Zampiello, APC for appellee Kenneth Barton.

Before: TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

2

TAYLOR, Bankruptcy Judge:

Creditor and appellee Kenneth Barton successfully recovered a state court judgment against debtors and appellants Zafar David Khan and Terrance Alexander Tomkow (jointly, "Appellants")[1] and their corporation, RPost International, Ltd. ("RIL"), based on conversion, fraud, breach of fiduciary duty, and California statutory violations related to his loss of common stock shares in RIL. The state court found the Appellants and RIL jointly and severally liable to Barton for compensatory damages and also awarded him punitive damages against the Appellants.

Prior to the final liquidation of damages, the Appellants each filed a chapter 13[2] petition. Barton filed proofs of claim in each case and also moved to convert both chapter 13 cases to chapter 7. The Appellants each countered with an adversary proceeding; they sought to disallow Barton's claims under § 502(b)(1) based on the allegation that the claims were subject to mandatory subordination under § 510(b). They also filed objections to Barton's claims in their respective bankruptcy

---

[1] The Appellants moved for permission to file a single brief and excerpts of record as to all six of the related appeals. A BAP motions panel granted the unopposed request. This treatment continues the same approach employed by the bankruptcy court and the parties before it; that is, a de facto joint administration of these proceedings.

The BAP Clerk of Court is directed to enter this disposition in each of these six related appeals.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

3

cases on the same theory.

After a hearing, the bankruptcy court converted the cases to chapter 7 and overruled the claims objections. And, based on the Appellants' representations that the claims objections resolved the adversary proceedings, it also dismissed the adversary proceedings with prejudice. These six related appeals followed.

We conclude that mandatory subordination was not required in relation to Barton's claims and, thus, that the bankruptcy court did not err in overruling the claims objections and dismissing the adversary proceedings with prejudice. Nor did it abuse its discretion in converting the cases to chapter 7. Therefore, we AFFIRM.

**FACTS**

During the "dot-com bubble" of the late 1990s, the Appellants and Barton co-founded start-up companies RPost, Inc. and RIL, which owned or controlled various patents relating to authentication and verification of emails and electronic payments. Barton subsequently suffered a stroke and was sidelined from active involvement in the businesses. Afterward, his relationship with the Appellants deteriorated to the point that he commenced litigation seeking unpaid compensation and reimbursement of expenses.

During the course of that litigation, Barton discovered that the Appellants took control of his 6,016,500 common stock shares in RIL, returned them to the company treasury, and thereby divested him of an equity interest in RIL. Consequently, he commenced another action against the Appellants

4

and RIL, among others, for conversion, fraud, breach of fiduciary duty, and violations of the California Business and Professions Code.

In August 2012, the state court determined that Barton met his burden of proof on all of the causes of action against the Appellants and RIL. As a result, it initially ordered the reissue of the converted RIL shares to Barton and awarded monetary damages for emotional distress. It also determined that the Appellants acted with malice, oppression, and fraud and, thus, that Barton was entitled to punitive damages. The state court subsequently conducted a second phase of trial to determine the appropriate amount of punitive damages.

On April 14, 2013 – the eve of the final hearing on punitive damages – the Appellants each filed a chapter 13 petition. In addition to Barton's claims, the Appellants each scheduled their respective secured mortgage debt and credit card debts.[3]

Thereafter, the bankruptcy court approved stipulated stay relief that allowed the state court action to continue to finalization of the judgment.[4] In a revised statement of decision and ruling on punitive damages issued in June 2013, the

---

[3] Both of the Appellants also scheduled a few "notice only" creditors, including the Internal Revenue Service and their state court attorney, on their schedules E and F; there were no claim amounts provided for these creditors.

[4] We exercised our discretion to take judicial notice of documents electronically filed in the adversary proceedings and bankruptcy cases as necessary. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

5

state court reversed its decision to order restoration of Barton's converted RIL stock; instead, it awarded the value of the converted stock. It, thus, entered a judgment awarding Barton compensatory damages in the amount of $2,840,060 (the value of his dispossessed RIL common stock shares), damages for emotional distress, and $880,021.91 in prejudgment interest. The judgment provided for joint and several liability for these compensatory damages against each of the Appellants and RIL. The state court also awarded punitive damages to Barton; it awarded $250,000 against Khan and $150,000 against Tomkow. The Appellants appealed from the judgment to the California court of appeal; to our knowledge, the appeal remains pending.

Barton filed proofs of claim in the bankruptcy cases and commenced adversary proceedings against the Appellants, seeking to deem the state court judgment nondischargeable under § 523(a)(2), (a)(4), and (a)(6). Barton subsequently moved to convert both of the Appellants' chapter 13 cases to chapter 7 based on, among other things, bad faith filings.

Days later, the Appellants commenced adversary proceedings against Barton. The adversary complaints contained a single claim for relief: disallowance of Barton's claims pursuant to § 502(b)(1) based on mandatory subordination under § 510(b). Concurrently, they filed objections to Barton's claims on the adversary proceeding dockets based on the same grounds. The Appellants filed identical claims objections in their chapter 13 cases.

The bankruptcy court simultaneously heard the motions to convert and claims objections. At an initial hearing, it noted

its disinclination to rule on the claims objections given the pending adversary proceedings. The Appellants, however, requested consideration of the claims objections at a continued hearing, asserted that they filed the adversary proceedings only to comply with procedural rules, and acknowledged that a ruling on the claims objections would resolve the adversary proceedings.

At the continued hearing, the bankruptcy court orally ruled in favor of Barton on both the motions to convert and the claims objections. Based on the factors set forth in Leavitt v. Soto (In re Leavitt), 171 F.3d 1219 (9th Cir. 1999), it found that the Appellants filed their chapter 13 cases in bad faith and, thus, it determined that cause for conversion to chapter 7 existed. The bankruptcy court found that the timing of the Appellants' chapter 13 filings evidenced an intent to defeat the state court action and that Appellants refused to provide sufficiently complete and accurate financial information relating to settlements and transactions involving their companies. As to the claims objections, it determined that Barton's claims were not subject to mandatory subordination under § 510(b).

The bankruptcy court entered orders converting the cases and overruling the claims objections, as well as judgments dismissing the adversary proceedings with prejudice. The Appellants timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (O). We have jurisdiction under 28

7

U.S.C. § 158.

**ISSUES**

1.  Did the bankruptcy court err in determining that Barton's claims were not subject to mandatory subordination and, thus, overruling the Appellants' claims objections?

2.  Did the bankruptcy court err in dismissing the Appellants' adversary proceedings?

3.  Did the bankruptcy court abuse its discretion in converting the Appellants' chapter 13 cases to chapter 7?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's dismissals of the adversary proceedings with prejudice. In the context of the claims objections, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. See Pierce v. Carson (In re Rader), 488 B.R. 406, 409 (9th Cir. BAP 2013) ("An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." (citation omitted)).

Factual findings are clearly erroneous if illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). Bad faith is a factual finding reviewed for clear error. Ellsworth v. Lifescape Med. Assocs., P.C. (In re

8

Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011).

An order converting a chapter 13 case to chapter 7 is reviewed for an abuse of discretion. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 (9th Cir. 2008). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. TrafficSchool.com, Inc., 653 F.3d at 832.

We may affirm on any basis in the record. Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION[5]

**A.    The bankruptcy court did not err in determining that Barton's claims were neither subject to mandatory subordination nor appropriately dismissed.**

The Appellants argue that the bankruptcy court erred when it failed to disallow Barton's claims based on the alleged necessity for mandatory subordination of the claims under

---

[5] Barton filed a request for judicial notice as to an order entered by the United States District Court for the Eastern District of Texas in an unrelated action. He seeks to supplement the record on our review of the bankruptcy court's decision to convert the cases with the district court's findings and conclusions as to the Appellants' conduct in that case. The district court's order, however, was entered on January 30, 2014 – after the bankruptcy court's entry of all of the orders and judgments on appeal here except for the judgment dismissing Tomkow's adversary proceeding.

Given that we review the bankruptcy court's decision to convert the cases for an abuse of discretion, we decline to take judicial notice of bad faith findings that were not before the bankruptcy court when it rendered its decision. Therefore, we deny Barton's request for judicial notice.

9

§ 510(b). We disagree. On this record, disallowance would not follow mandatory subordination, even if subordination was appropriate. In any event, on this record, subordination was not required.

As the dismissal judgments were predicated on the orders overruling the claims objections, we first review the decisions on the claims objections.

**1.   The bankruptcy court correctly overruled the claims objections.**

The Appellants contend that the plain language of § 510(b) requires mandatory subordination of Barton's claims and, as a result, that claims disallowance under § 502(b)(1) necessarily follows. Although the bulk of the Appellants' arguments focus on mandatory subordination, it is clear that subordination is simply a means to an end: the total disallowance of Barton's claims. We conclude that disallowance would never result in these cases.

**a.   Even if Barton's claims were subject to mandatory subordination, statutory claims disallowance would not follow.**

Generally speaking, subordination relates to the order of distribution among a debtor's creditors, not whether a claim is allowed under the Code. See O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC), 488 B.R. 394, 404 (9th Cir. BAP 2013) ("The purpose of subordination . . . is to adjust the place in line of certain claims in the bankruptcy distribution scheme."). Although subordination may result in the functional disallowance of a claim, it is not a statutory

10

basis for claims disallowance. See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007) (claims disallowance is limited to grounds set forth in § 502(b)(1)-(9)).

Here, the Appellants contend that mandatory subordination effectuates disallowance under § 502(b)(1) "because a holder of common stock has no claim or interest against individual [d]ebtors." We certainly agree that one cannot hold an equity interest in another human being. But, other than quoting § 502(b)(1) in their brief on appeal, the Appellants' argument lacks both logical development and any authoritative support.

The Appellants' cursory reference to Carrieri v. Jobs.com Inc., 393 F.3d 508 (5th Cir. 2004), does not aid them. As directly relevant here, the Fifth Circuit affirmed the district court's determination that a shareholders group's asserted claims based on a contract allowing redemption of shares and warrants were "equity securities," as defined by § 101(16)(C). Id. at 518-28. In doing so, it concluded that, "even assuming arguendo" that the shareholders held claims, the bankruptcy court properly disallowed the claims for two reasons: (1) the claims were subject to subordination under § 510(a) or (b); and (2) the shareholders' rights under the operative agreement with the debtor were neither ripe nor exercised as of the petition date. Id. at 526-27.

Carrieri is distinguishable. There, the debtor was a corporation, not an individual, and the shareholders held only equity securities within the meaning of § 101(16). Here, the Appellants are individuals, and they fail to explain how any

11

claim based on a state court judgment is categorized correctly as an equity security, within the plain meaning of § 101(16), as opposed to being categorized as a claim under § 101(5)(A). More importantly, they fail to recognize that while the Carrieri bankruptcy court disallowed claims following subordination under § 510(b), it did so because there was no then-existing right to payment or recovery as required for a claim under § 101(5)(A). Id. at 524-25. Here, the state court judgment created a present right to payment. And, finally, they fail to acknowledge that the Fifth Circuit noted support for the theory that equity securities are not always mutually exclusive of a claim, although it ultimately determined not to finally decide that issue. Id. at 525. Carrieri, if anything, makes clear that what Barton holds here is a claim or right to payment - not an equity security.

On this record, there is no basis for claims disallowance under § 502(b)(1) - even if mandatory subordination is appropriate; and it is not.

### b. Barton's claims were not subject to mandatory subordination under the Code.

Section 510(b) "mandates the subordination of damages claims arising from the purchase or sale of a security."[6] Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phx., Inc.), 240 F.3d 823, 827 (9th Cir. 2001) (internal quotation marks

---

[6] Mandatory subordination also includes claims arising from rescission of a purchase or sale of security and allowed reimbursement or contribution under § 502 on account of such a claim. Those types of claims, however, are not at issue in this appeal.

12

omitted). The Ninth Circuit broadly interprets the scope of § 510(b). See In re Tristar Esperanza Props., LLC, 488 B.R. at 403.

Our analysis here begins with the statutory construction of § 510(b), "the first step of which is to determine whether the language has a plain and unambiguous meaning with regard to the particular dispute." Hawkins v. Franchise Tax Bd. of Cal., 769 F.3d 662, 666 (9th Cir. 2014). This first step requires an evaluation of "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." Id. (citation and internal quotation marks omitted). If the plain language of the statute is unambiguous, that meaning controls, and the inquiry terminates. Id. If, however, the language is ambiguous, then we proceed to the second step and consult the legislative history. Id.

Section 510(b) provides for subordination in relation to "claims or interests that are **senior to or equal** the claim or interest represented by such security." 11 U.S.C. § 510(b) (emphasis added). It is axiomatic that a claim or interest based on stock may exist only at a corporate level because, as the Appellants concede in connection with their claims disallowance argument, it is impossible to assert an equity interest in a person.

More importantly, the subordination that § 510(b) mandates relates to claims that are senior or equal to Barton's claims. Here, there is no evidence that the Appellants' individual, general unsecured creditors could seek recovery as creditors at the corporate level. As a result, their individual, general

13

unsecured creditors do not hold claims senior to or equal to any of Barton's claims, past or current, based on an equity position at the corporate level. We find this portion of the statutory language clearly inconsistent with mandatory subordination of Barton's claims, but, at a minimum, ambiguity exists as to whether § 510(b) applies in an individual debtor case.

The object and policy of mandatory subordination "serve[] to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of **corporate** assets." Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 493 F.3d 1067, 1071 (9th Cir. 2007) (emphasis added). As these general principles disfavor shifting all of the risk of loss to creditors, § 510(b) works "to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with [the corporation's] unsecured creditors." Id. at 1071-72. The object and policy of mandatory subordination, thus, affirm that § 510(b) relates to corporate debt and the distribution of corporate assets.

The legislative history of § 510(b) also supports its inapplicability in an individual debtor's case. In enacting mandatory subordination, Congress intended to address "the historical problem of investors recovering fraud claims pari passu with general creditors in [corporate] bankruptcy cases." In re Tristar Esperanza Props., LLC, 488 B.R. at 402. And, in crafting the statute, Congress relied extensively on a 1973 law review article authored by professors John J. Slain and Homer Kripke. Id. As acknowledged in the legislative history of

14

§ 510, the article concluded that the distribution of assets in corporate bankruptcy should be predicated on the allocation of risk between general creditors and security holders. See H.R. Rep. 95-595, at 195 (1977).

The Ninth Circuit has since recognized that § 510(b) is, thus, premised on two assumptions: "1) the dissimilar risk and return expectations of shareholders and [corporate] creditors; and 2) the reliance of [corporate] creditors on the equity cushion provided by shareholder investment." In re Betacom of Phx., Inc., 240 F.3d at 830. These assumptions support subordination at the corporate level - not in an individual debtor case where, once again, equity interests do not exist.

Neither the language of the statute nor the object and policy of mandatory subordination nor the legislative history of § 510(b) support the view that Congress intended mandatory subordination to apply in an individual debtor case. Instead, all of these sources point to the subordination of a corporate shareholder's equity-based claim in a corporate case context.

The Ninth Circuit case law on mandatory subordination is consistent with our interpretation. Our review of the case law reveals no case in which § 510(b) was applied in an individual debtor's case based on an equity position in an affiliate entity. The cases at the appellate level, instead, all involved entity debtors. See, e.g., In re Am. Wagering, Inc., 493 F.3d 1067; In re Betacom of Phx., Inc., 240 F.3d 823; Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.), 715 F.2d 430 (9th Cir. 1983); Falcon Capital Corp. S'holders v. Osborne (In re THC Fin. Corp.), 679 F.2d 784 (9th Cir. 1982) (Bankruptcy Act case);

15

Kelce v. U.S. Fin. Inc. (In re U.S. Fin. Inc.), 648 F.2d 515 (9th Cir. 1980) (Bankruptcy Act case); see also Margaret B. McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co.), 377 B.R. 608 (9th Cir. BAP 2007); cf. In re Tristar Esperanza Props., LLC, 488 B.R. 394 (applying § 510(b) to a limited liability company).

We acknowledge that an unpublished decision reached a contrary conclusion. See Liquidating Trust Comm. of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio), 2012 WL 5467754 (Bankr. N.D. Cal. Nov. 8, 2012), aff'd, 2013 WL 6073367 (N.D. Cal. Nov. 18, 2013). Del Biaggio, however, is not binding on this Panel. Further, as an unpublished decision, the analysis and outline of the facts is not well-developed; in particular, it does not focus squarely on the question of who is being subordinated. And while the factual summary is not complete, the case appears distinguishable; the subordinated creditor did not hold a final judgment that included a punitive damages recovery, and the facts suggest that creditors in the individual case also held claims against the corporate affiliate for recovery of embezzled funds used to acquire shares in the affiliate.

At oral argument, the Appellants also referenced two other cases that they contend are supportive of their position on mandatory subordination: Orange Cnty. Nursery, Inc. v. The Minority Voting Trust (In re Orange Cnty. Nursery Inc.), --- B.R. ----, 2014 WL 5472534 (C.D. Cal. Oct. 1, 2014); and In re Lehman Brothers, Inc., 503 B.R. 778 (Bankr. S.D.N.Y. 2014). For the reasons already discussed, however, neither case assists

16

them, as both cases involved a corporate debtor. The Appellants, in fact, conceded that the case law is devoid of any published decision in which § 510(b) subordination occurred in a non-entity debtor case.

Here, in determining that Barton's claims were not subject to mandatory subordination, the bankruptcy court recognized the critical distinction between corporate debtor cases and individual debtor cases when mandating subordination. Based on the plain language of the statute, its objective and policy, the § 510(b) legislative history, and case law, we conclude that the bankruptcy court did not err in determining that § 510(b) was not applicable here and in overruling the claims objections.

## 2. As there was no basis for claims disallowance or mandatory subordination, the bankruptcy court appropriately dismissed the adversary proceedings.

Given our conclusion on the claims objections, the challenge to the adversary proceeding dismissals necessarily fails, and the bankruptcy court did not err in dismissing them with prejudice.

At the first hearing, the bankruptcy court indicated that it would not rule on the claims objections because of the pending adversary proceedings. In response, the Appellants clarified that they filed the claims objections in both the bankruptcy cases and adversary proceedings for procedural and technical reasons; namely, in order to comply with Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure. The Appellants asserted, emphatically, that resolution of the claims objections and the adversary proceedings did not require a trial

17

and that a ruling on the claims objections resolved the adversary proceedings. Barton agreed. The bankruptcy court then proceeded accordingly.

The bankruptcy court's case dismissals were based appropriately and squarely on its determinations on the claims objections. The Appellants could not, as a matter of law, prevail on the adversary complaints. We, thus, conclude that dismissal of the adversary proceedings was appropriate.

**B.    The bankruptcy court did not abuse its discretion in converting the Appellants' chapter 13 cases to chapter 7 cases.**

The Appellants also argue that the bankruptcy court erred when it failed to consider the totality of the circumstances in converting their chapter 13 cases to chapter 7. In particular, they contend that the bankruptcy court improperly considered only two of the four factors set forth in In re Leavitt. We again disagree.

On request of a party in interest and after notice and a hearing, the bankruptcy court may convert a chapter 13 case to chapter 7 for cause. 11 U.S.C. § 1307(c). In addition to a non-exclusive statutory list of factors, the filing of a chapter 13 case in bad faith may constitute cause for conversion. See In re Leavitt, 171 F.3d at 1224 (citing Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (discussing bad faith in the context of chapter 13 case dismissal)).

In determining whether cause exists based on a bad faith filing, the bankruptcy court must assess the totality of the circumstances. In re Eisen, 14 F.3d at 470. This assessment

includes consideration of the following four factors:

1. whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner;

2. the debtor's history of filings and dismissals;

3. whether the debtor only intended to defeat state court litigation; and

4. the presence of egregious behavior.

In re Leavitt, 171 F.3d at 1224.

The Leavitt factors are not conjunctive. The bankruptcy court is not required to find that each factor is satisfied or even to weigh each factor equally. See, e.g., Meyer v. Lepe (In re Lepe), 470 B.R. 851, 863 (9th Cir. BAP 2012) (in the context of a good faith determination at plan confirmation, the Panel noted that two of the Leavitt factors were inapplicable to the case on appeal). The Appellants conceded as much at oral argument. The bankruptcy court's critical consideration in determining bad faith is the totality of the circumstances. The Leavitt factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances.

Here, the bankruptcy court found that the Appellants filed their chapter 13 cases in bad faith. Stating that it had considered all of the Leavitt factors in reaching its determination, it found that the majority of the factors were satisfied, with the exception of the second factor, which it deemed inapplicable.

The bankruptcy court found that the timing of the filings

19

demonstrated the Appellants' intent to impose barriers to the conclusion of the state court action; in particular, that they strategically filed prior to entry of the state court judgment, a judgment that would have precluded the Appellants from seeking chapter 13 relief based on the statutory debt limit. See 11 U.S.C. § 109(e).

The bankruptcy court also specifically found that the Appellants did not candidly and completely provide financial information. It observed that they refused to provide information on transactions made by owned or controlled companies, including litigation settlements that resulted in payments to the Appellants and RIL, and that they valued their ownership interests in RIL at zero despite the potential positive impact on value from the settlements.

Based on its statements at the hearing, it is clear that the bankruptcy court did not apply the wrong legal standard. It expressly identified the Leavitt factors, stated that it considered all four factors, and then made adequate findings.

The Appellants specifically challenge the bankruptcy court's application of the third Leavitt factor. Relying first on Ho v. Dowell (In re Ho), 274 B.R. 867 (9th Cir. BAP 2002), they argue that the bankruptcy court was required to find that the sole purpose for their chapter 13 filings was to defeat the state court action, which they assert it did not do. We are not persuaded by this argument.

In Ho, this panel recognized that "bad faith exists where the debtor's *only* purpose is to defeat state court litigation." 274 B.R. at 877 (emphasis in original). The Panel, however,

20

concluded that the bankruptcy court abused its discretion where it "relied exclusively on the third [Leavitt] factor and did not base its bad faith finding on the totality of the circumstances." Id. at 876-77. The converse is true here; the bankruptcy court identified and applied the relevant Leavitt factors and, as its statements at the hearing reflect, it considered the totality of the circumstances of the Appellants' filings.

Although the third Leavitt factor presumes that a debtor has no other legitimate purpose for filing, the bankruptcy court does not consider this factor in a vacuum. Even if a debtor presents more than one purpose for filing, the third Leavitt factor does not fail to support cause if the other purpose also reflects bad faith. And, once again, the third factor is considered in a totality of the circumstances context. The record here does not evidence a legitimate purpose that negated a totality of the circumstances finding of bad faith.

The Appellants also argue that the bankruptcy court should have considered their proposed chapter 13 plans in evaluating the purpose of their chapter 13 filings. This argument similarly fails. There is no per se rule mandating that the bankruptcy court evaluate confirmability of a debtor's proposed chapter 13 plan when determining whether § 1307(c) cause exists. In fact, one Leavitt factor requires consideration of whether the debtor misrepresented facts in his petition **or** plan, or otherwise filed his petition **or** plan in an inequitable manner. We reject the suggestion that cause cannot exist where a plan is facially confirmable. And, here, the plans did not propose to

21

pay any amount to Barton; that is, the plans did not suggest a good faith attempt to pay the Appellants' largest creditor.

The Appellants also emphasize that they were eligible for chapter 13 at the time of their petitions. But, eligibility is not synonymous with entitlement. Chapter 13 was advantageous to the Appellants; they possessed more control over estate assets and, importantly, could potentially circumvent nondischargeability of Barton's claims under § 523(a)(6). See 11 U.S.C. §§ 523(a), 1328(a), (c)(2); Fed. R. Bankr. P. 4007(d); Toste v. Smedberg (In re Toste), 2014 WL 3908139, at *2 (9th Cir. BAP Aug. 12, 2014) (unless a chapter 13 debtor moves for a hardship discharge, § 523(a)(6) is unavailable in chapter 13 case). As the state court judgment sounded, in part, in conversion, chapter 13 offered a unique and attractive opportunity to the Appellants. A strategic desire for chapter 13 relief, however, does not support reversal on this record.

In sum, the bankruptcy court appropriately considered the third Leavitt factor; there was no abuse of discretion in this regard.

Further, the Appellants challenge the bankruptcy court's alleged finding that they concealed information relating to potentially valuable settlements. They contend that the bankruptcy court did not actually find that they concealed anything and, instead, improperly based its decision to convert on "*if* there were valuable settlements that *might* enhance stock value, then [Appellants'] *may have* misrepresented the value of such shares in their schedules by scheduling a zero value."

Aplts' Joint Op. Br. at 21 (emphasis in original). The Appellants insist that they did not conceal anything and, to the best of their ability, made appropriate disclosures. This argument also fails.

The record reflects that the bankruptcy court's findings related to the nature and quality of the Appellants' conduct in filing their chapter 13 schedules and responding to questions at their § 341(a) meetings of creditors. Transcripts of the Appellants' § 341(a) meetings show that the chapter 13 trustee asked for additional information as to valuation of the Appellants' shares in their various businesses and requested that the Appellants amend their statements of financial affairs accordingly. At a continued meeting of creditors two months later, the Appellants had not done so. Khan, in fact, never amended his schedules.[7]

On examination by Barton's counsel at the § 341(a) meeting, Khan refused to respond to questions about third party settlements based on non-disclosure agreements. When asked whether he or Tomkow provided the terms of the settlement to the chapter 13 trustee, Khan evasively responded that he provided many documents and had not committed to memory the documents produced to the trustee. And, Khan also refused to provide testimony as to the approximate amount of sales, transfers of assets, and loans by and between various business entities owned

---

[7] Khan filed amendments to schedules B and J and the statement of financial affairs on the same day as the second continued § 341(a) meeting. The Clerk's Office, however, immediately issued a notice of error and instructed him to re-file the documents. Khan never did so.

23

or controlled by Appellants in the 18 months before the chapter 13 filings.

The bankruptcy court's concern regarding these statements was reasonable, as was its determination that a chapter 7 trustee was necessary to investigate the settlements and to determine whether additional assets existed. It did not find that the Appellants had concealed assets; and it did not need to do so. Instead, as part of its totality of the circumstances analysis, the bankruptcy court appropriately considered the nature and quality of the Appellants' statements and conduct and found them evasive and inappropriate. On this record, its findings were not clearly erroneous.

The bankruptcy court did not abuse its discretion in converting the Appellants' cases to chapter 7.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court.