**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. SC-14-1388-JuKlPa |
| ) | |
| JASON SCOTT BROWN, ) | Bk. No. 13-11913 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JASON SCOTT BROWN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | M E M O R A N D U M[*] |
| ) | |
| THOMAS H. BILLINGSLEA, JR., ) | |
| Chapter 13 Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Oral Argument
on July 23, 2015[**]

Filed - October 26, 2015

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding
_____

Appearances:    Michael G. Doan of Doan Law Firm on brief for
                appellant; Todd Headden on brief for appellee.
                _____

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] The parties to this appeal filed a motion and stipulation for submission of the appeal on the briefs. By order entered on May 13, 2015, the Panel determined that oral argument was not needed and that this appeal is suitable for submission on the briefs and record without oral argument pursuant to Rule 8012.

-1-

Before:  JURY, KLEIN,[***] and PAPPAS, Bankruptcy Judges.

Debtor Jason Scott Brown (Debtor) appeals from the bankruptcy court's order converting his chapter 13[1] case to one under chapter 7.  We AFFIRM.

## I.  FACTS

On July 20, 2012, Debtor's father died intestate.  On June 13, 2013, probate was initiated.  Debtor was the personal representative of the probate estate.  In this capacity, Debtor filed documents in the state court probate proceedings which stated that his three brothers each assigned and abandoned to him their beneficial interests in the father's estate.  Debtor also arranged to sell his father's home which was the only significant asset owned by the probate estate.  The sale of the home closed on December 16, 2013, and generated net proceeds of $65,812.

Three days before the closing, on December 13, 2013, Debtor filed a bare bones chapter 13 petition.  Thomas H. Billingslea was appointed the chapter 13 trustee (Trustee).  Eleven days later, Debtor filed his schedules and chapter 13 plan which proposed $520 monthly payments over thirty-six months.  The plan

---

[***] Hon. Christopher M. Klein, Chief United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

paid three secured creditors in full and proposed a 0% dividend for unsecured creditors.

In Schedule B, Debtor listed an anticipated inheritance of $2,500 which he claimed fully exempt in Schedule C. In Schedule F, Debtor listed unsecured claims in the amount of $33,499. At the time Debtor filed his petition he was unemployed and collecting social security. Debtor indicated that he was renting garage space to run an automotive repair business and expected his income to increase within the next year.

At the § 341(a) meeting, Debtor's counsel and Trustee's counsel signed a pre-confirmation modification to the chapter 13 plan (PCM). The PCM resolved Trustee's objection to the length of the plan by requiring Debtor to turn over $3,224 in probate proceeds within forty-five days of receipt because the plan needed to pay a car creditor more funds.

On April 11, 2014, the probate estate closed and Debtor distributed to himself $55,487.97 as the sole beneficiary of his father's estate. Debtor did not amend his schedules at this time to include the increased inheritance or claim any further exemption in the amount received.

In late April, Trustee objected to Debtor's plan and moved to dismiss his case. Trustee argued that since Debtor's plan did not make the non-exempt portion of the inheritance proceeds available to pay creditors it failed the best interest of creditors test under § 1325(a)(4). Trustee further asserted that any confirmation order should be contingent upon Debtor's forwarding a check to Trustee's lockbox account in the amount of

$37,569 and a PCM increasing the pro-rata pot for payment to the general unsecured creditors to $34,563.

Attached to Trustee's objection was the petition for final distribution from the probate estate. This document showed that Debtor's brothers each filed assignments of their beneficial interests in the inheritance to Debtor with the probate court on August 7, 2013, and that $55,487.97 was available for distribution.

On May 9, 2014, Debtor's counsel resigned from the Doan Law Firm and a new attorney was assigned to his bankruptcy case.

On the same day, Debtor filed a response to Trustee's objection. Debtor asserted that his equitable share of his father's estate was $12,372 and fully exempt. Thus, according to Debtor, his plan did not need to be modified. In the attached declaration, Debtor stated that he and his three brothers were each entitled to 25% of the inheritance. Debtor requested the bankruptcy court to confirm his plan as proposed or, in the alternative, allow him additional time to negotiate an alternative plan.

On May 20, 2014, Trustee filed a status report noting that Debtor was the sole beneficiary of his father's estate because his siblings assigned their interest to him. Despite this assignment, Debtor now asserted a contrary position — that his three brothers "would receive their fair share." In light of this development, Trustee requested the bankruptcy court to refrain from granting any request for voluntary dismissal without a hearing to allow Trustee to consider conversion.

The bankruptcy court held an initial hearing on Trustee's

-4-

objection to Debtor's plan on May 27, 2014. The matter was continued to July 8, 2014, to allow the parties to present additional evidence regarding distribution of the father's estate.

Trustee subsequently filed an amended objection to Debtor's plan and sought conversion to chapter 7 instead of dismissal. Trustee maintained that conversion was appropriate because Debtor failed to disclose his inheritance which was an abuse of the bankruptcy system under the holding in Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 767 (9th Cir. 2008). Trustee also renewed his request that Debtor turn over the non-exempt portion of the funds and provide a PCM increasing the pro-rata to unsecured creditors to $34,563 so that the plan complied with the best interest of creditors test. If Debtor refused to comply, Trustee requested the court to convert the case to chapter 7 for a panel trustee to seek turnover of the funds and request any other remedies available to the trustee. Attached to the amended objection were Debtor's brothers' assignments of their beneficial interest in the inheritance to Debtor and a document showing Debtor had received $55,487.97 from the probate estate on April 1, 2014.

On June 17, 2014, Debtor's counsel filed a status report advising the court that Debtor had misunderstood that the inheritance funds were property of his estate and that he could propose a 100% plan once he objected to a certain creditor's claim.

Trustee later filed a status report stating that Debtor appeared to acknowledge that the inherited property was part of

the bankruptcy estate and that the unsecured creditors should be provided a substantial pro-rata payment. Trustee also stated that Debtor's counsel indicated that he needed additional time to present a confirmable and feasible plan which provided the necessary pro-rata payments.

In a June 26, 2014 amended status report, Trustee again expressed his concern that while Debtor was trying to formulate a confirmable plan, the liquid assets of his estate would continue to diminish. Trustee requested Debtor to deposit the remaining funds in his counsel's client trust account, provide a declaration concerning the transfers to his brothers, and provide bank statements and cancelled checks. If Debtor failed to deposit $37,569 into his counsel's client trust account by the hearing, Trustee requested immediate conversion to chapter 7.

At the July 8, 2014 continued hearing on Trustee's objection to confirmation of Debtor's plan, without being sworn in, Debtor explained to the court that his share of the inheritance went into his business and the balance was paid in cash to two brothers and by check to a third brother. The bankruptcy court did not make any findings of bad faith at that hearing, stating that it would require an adversary proceeding or an evidentiary proceeding to decide whether Debtor acted in bad faith. Nonetheless, the court opined that since the only apparent source of assets to pay creditors had been dissipated, Debtor's pursuit of the chapter 13 plan could not be in good faith. The bankruptcy court also found that cause existed for conversion because a chapter 7 trustee would be better suited to

investigate Debtor's transfers to his brothers and bring any fraudulent transfer claims.

Debtor's counsel represented to the court that he had been unable to provide an accounting since several of the transfers were to Debtor's brothers in cash. Further, when the bankruptcy court indicated that it would convert the case, Debtor's counsel asserted Debtor's right under § 1307(b) to dismiss his case. The bankruptcy court then ordered conversion of the case, finding there was an abuse of the bankruptcy process, relying on In re Rosson. When Debtor's counsel requested an opportunity to distinguish Rosson, the court stated: "You have that opportunity. You may object to the order in the ordinary course."

On July 25, 2014, the bankruptcy court entered the order converting Debtor's chapter 13 case to chapter 7 under § 1307(c) for cause. The order provided in part:

> After inquiry by the Court regarding Debtor's inheritance of $55,487.97; the Court finds Debtor's actions constituted an abuse of the bankruptcy system and were not filed in good faith.
>
> The Court grants the Trustee's motion to convert to chapter 7 under section 1307(c) for cause for the following reasons:
>
> 1) Debtor's proposed plan (Docket # 11) as modified by Pre-Confirmation Modification form (Docket # 24) provides a 0% dividend to the general unsecured creditors;
>
> 2) Debtor has provided no evidence indicating that a modified plan is feasible;
>
> 3) Debtor ignored the entered Pre-Confirmation Modification form (Docket #24) whereby Debtor would turnover $3,224 within 45 days of receipt of the inheritance and thus is in default on his plan payments;

-7-

4) Despite knowledge to the contrary, Debtor did not correct inaccurate schedules; and,

5) Debtor intentionally spent money of the estate and transferred the funds to relatives. As such, an independent party is needed to evaluate whether the estate should bring fraudulent conveyance actions [against] these parties.

6) The Court finds that the "best interest of the creditors" is served by conversion to chapter 7.

Debtor filed an amendment to his schedules on August 8, 2014, updating the value of the inheritance and claiming his exemption.

On August 11, 2014, Debtor filed a notice of appeal from the bankruptcy court's order converting his case.

On the same day, Debtor filed a motion for reconsideration, the substance of which was that § 1307(c) required both a finding of cause and that conversion be in the best interest of the creditors and the estate. Debtor maintained that the bankruptcy court's findings at the initial conversion hearing did not expressly state any of the grounds set forth in § 1307(c) for cause. Debtor also argued that since most of the inheritance was transferred pre-conversion, the inheritance was no longer part of the estate under § 348(f)(1)(A).

After a hearing on the matter, the bankruptcy court supplemented its previous findings of fact and conclusions of law in a memorandum decision denying Debtor's motion for reconsideration.[2] The court found that the undisputed facts

---

[2] In essence, Debtor's motion was a request for clarification and reconsideration. Under Civil Rule 52(b), incorporated by Rule 7052, the bankruptcy court had discretion to amend its findings - or make additional findings - and amend the

(continued...)

-8-

demonstrated three separate statutory grounds for conversion under § 1307(c). That section provides in relevant part:

> (c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including--
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> . . . .
>
> (4) failure to commence making timely payments under section 1326 of this title;
>
> . . . .
>
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; . . . .

First, the bankruptcy court determined that its findings at the prior conversion hearing supported a determination of cause under § 1307(c)(4); i.e., Debtor's failure to turn over the one time plan payment of $3,224 within 45 days of receipt of the inheritance as required under the PCM. Instead, the court observed that Debtor spent the money, could not account for it, and blamed his counsel.

Next, the bankruptcy court found cause for conversion under § 1307(c)(5). The court noted that at the July 8, 2014 hearing, it denied confirmation of Debtor's plan and denied Debtor's request to modify the plan to render it a 100% plan. The

---

[2](...continued)
conversion order accordingly.

bankruptcy court found the undisputed evidence showed that Debtor could not fund a 100% plan since he transferred the inheritance funds and he otherwise lacked cash flow to fund a 100% plan. In that regard, the court pointed out that Debtor's amended schedules filed after conversion reflected that his net monthly income from his business at the time of conversion was $2,052.17. According to the court, this was insufficient to cover his previous living expenses of $2,266 set forth in his original Schedule J.

Finally, the bankruptcy court found cause existed under § 1307(c)(1) due to Debtor's delay in confirming a plan that had been prejudicial to creditors. The court observed that Debtor's case had been pending for seven months, during which time Debtor received funds belonging to the estate of $55,487.97, an amount sufficient to pay his creditors in full. Yet, during a three month period, Debtor may have spent all of the money despite Trustee's pending claims to it and has never accounted for it. The court found that the loss of the money was clear prejudice.

The bankruptcy court then concluded it did not need to reconsider its finding that conversion was in the best interests of creditors. The court simply noted that conversion would result in the appointment of a chapter 7 trustee who would have standing to assert avoiding powers against Debtor and his brothers. The court also rejected Debtor's argument that conversion would not be in the best interests of creditors since the inheritance was already spent. According to the bankruptcy court, this premise did not apply when Debtor acted in bad faith.

The bankruptcy court also considered the test for bad faith set forth in Drummond v. Welsh (In re Welsh), 711 F.3d 1120, 1129 n.45 (9th Cir. 2013) (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219 (9th Cir. 1999)):

1. whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner;

2. the debtor's history of filings and dismissals;

3. whether the debtor only intended to defeat state court litigation; and

4. the presence of egregious behavior.

The court found factors 1 and 4 were amply supported by the evidence and that the other two factors were not applicable.

As to factor one, the bankruptcy court found that whether Debtor was misguided or not, he intentionally spent the inheritance rather than pay his creditors despite Trustee's demands and Debtor was less than candid in his bankruptcy disclosures in pursuing this aim. The court found the facts similar to those in Rosson in that substantial property of the estate was gone because Debtor ignored Trustee's demands for the inheritance and Debtor failed to provide an accounting.

The bankruptcy court also explained that ample evidence of concealments supported its finding that Debtor intentionally abused the bankruptcy system: (1) Debtor made inaccurate statements that his inheritance was only worth $2,500, when he had arranged the sale of property that generated $65,812 in proceeds, and he had possession of this money before his schedules were filed; (2) Debtor proposed a 0% plan when the funds he now admits he was entitled to receive would have paid

-11-

his creditors in full; (3) his claim that his brothers were entitled to 75% of the inheritance was inconsistent when the evidence showed Debtor had filed the brothers' waivers with the probate court, and these waivers were the reason Debtor alone, not his brothers, received the probate estate net funds. Debtor never explained why he filed these waivers himself, if he always intended to respect his parents' will; (4) Debtor never provided an accounting of the funds that he had given his brothers and was evasive when the court asked him about these gifts; and (5) although Debtor blamed his counsel for his misguided actions, Debtor alone was responsible for his conduct and acted intentionally, particularly since there was no evidence showing counsel's knowledge that Debtor was holding over $65,000 in inheritance when Debtor had scheduled the inheritance at $2,500. In the end, the court denied Debtor's motion for reconsideration by an order entered September 23, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O).[3] We have jurisdiction under 28 U.S.C. § 158.[4]

---

[3] The bankruptcy court correctly concluded that it had jurisdiction over Debtor's motion for clarification and reconsideration despite the fact Debtor had filed a premature notice of appeal. Under Rule 8002(b), the notice of appeal became effective with entry of the bankruptcy court's order which resolved the motion for reconsideration.

[4] Debtor did not amend his notice of appeal to include the order denying his motion for reconsideration. Nonetheless, we conclude that his notice of appeal incorporates the bankruptcy court's supplemental findings of fact and conclusions of law

(continued...)

-12-

### III. ISSUE

Did the bankruptcy court abuse its discretion in converting Debtor's chapter 13 case to chapter 7?

### IV. STANDARDS OF REVIEW

We review an order regarding conversion of a case for abuse of discretion. In re Rosson, 545 F.3d at 771; Levesque v. Shapiro (In re Levesque), 473 B.R. 331, 336 (9th Cir. BAP 2012).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir.2009) (en banc). First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings for clear error. Id. at 1262 and n. 20. We must affirm the bankruptcy court's factual findings unless we determine that those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id.

Bad faith is a factual finding reviewed for clear error. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011).

---

[4](...continued) which clarified or amended its previous findings on the underlying conversion order. Further, Trustee had notice of the issues on appeal and an opportunity to brief the issues that arise out of both the underlying conversion order and the order denying reconsideration. Accordingly, we discern no prejudice from Debtor's failure to amend his notice of appeal. See United States v. Arkison (In re Cascade Rds., Inc.), 34 F.3d 756, 761-762 n.5 (9th Cir. 1994).

-13-

## V. DISCUSSION

**A. Legal Standards: Conversion for "Cause"**

On request of a party in interest and after notice and a hearing, the bankruptcy court may convert a chapter 13 case to chapter 7, or may dismiss a case, whichever is in the best interests of creditors and the estate, for cause. § 1307(c). Section 1307(c) sets forth a non-exclusive list of factors which constitute "cause" for conversion or dismissal including unreasonable delay by the debtor that is prejudicial to creditors (§ 1307(c)(1)); failure to commence making timely payments under § 1326 (§ 1307(c)(4)); and denial of confirmation of a plan under § 1325 and denial of a request made for additional time for filing another plan or a modification of a plan (§ 1307(c)(5)).

Section 1307(c) establishes a two-step analysis for dealing with questions of conversion and dismissal. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006).

In addition to the non-exclusive statutory list of factors under § 1307(c), the filing of a chapter 13 case in bad faith may constitute cause for conversion. See In re Leavitt, 171 F.3d at 1224 (citing Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (discussing bad faith in the context of chapter 13 case dismissal)). In determining whether cause exists based on a bad faith filing, the bankruptcy court must assess the totality of the circumstances. In re Eisen, 14 F.3d at 470. This

-14-

assessment includes consideration of the following four factors:

> 1. whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner;
>
> 2. the debtor's history of filings and dismissals;
>
> 3. whether the debtor only intended to defeat state court litigation; and
>
> 4. the presence of egregious behavior.

In re Welsh, 711 F.3d at 1129 n.45. "The bankruptcy court is not required to find that each factor is satisfied or even to weigh each factor equally." Khan v. Curry (In re Khan), 523 B.R. 175, 185 (9th Cir. BAP 2014) (citing Meyer v. Lepe (In re Lepe), 470 B.R. 851, 863 (9th Cir. BAP 2012)(in the context of a good faith determination at plan confirmation, the Panel noted that two of the Leavitt factors were inapplicable to the case on appeal)). Rather, "[t]he . . . factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." In re Khan, 523 B.R. at 185.

So long as the bankruptcy court applied these legal standards to the facts, it was for the bankruptcy court, as the trier of fact, to determine whether there was "cause" for conversion based on either § 1307(c) or bad faith grounds and to determine whether conversion was in the best interest of creditors and the estate.

**B.    "Cause" For Conversion Under § 1307(c)**

**1.    Section 1307(c)(1)**

Under § 1307(c)(1), the bankruptcy court may convert a chapter 13 case to one under chapter 7 ". . . . for cause, including . . . (1) unreasonable delay by the debtor that is

-15-

prejudicial to creditors." Debtor argues that this provision does not apply because first, there was no unreasonable delay that was prejudicial to creditors when he was current on plan payments the entire time and second, a PCM could have been entered at the July 8, 2014 hearing allowing a 100% plan and immediate disbursal to creditors.

We are not convinced. The bankruptcy court's conclusion that there was unreasonable delay which was prejudicial to creditors was adequately supported by inferences drawn from the facts presented at the underlying hearings. The record shows Debtor's case was pending for seven months during which time he received funds of $55,487.97. The non-exempt portion of those funds was sufficient to pay his unsecured creditors in full. Yet, despite Trustee's numerous requests for him to turn over the funds, Debtor disbursed the bulk of the money to his brothers and then spent the rest. On these facts, it was not error for the court to conclude that Debtor's creditors suffered prejudice from the loss of the money.

Indeed, nowhere does Debtor contend on appeal that the bankruptcy court's findings were clearly erroneous. Instead, Debtor focuses on his "proposed" 100% plan and "timely" payments. Debtor's focus is improper. First, the record shows that Debtor never affirmatively "proposed" or "filed" a plan modification. Rather, Debtor's counsel stated both in a pleading and at oral argument that Debtor anticipated objecting to a certain proof of claim and, if successful, Debtor "believed" that he could propose and complete a plan that paid 100% of all allowed claims. Second, even if Debtor had affirmatively proposed such a plan, it

-16-

was unconfirmable on its face when Debtor's income was insufficient to support the payments. Finally, the record reflects that Debtor never made the $3,224 payment to Trustee under the PCM. Therefore, contrary to his belief, he did not make all the payments under his plan in a timely manner. Accordingly, the bankruptcy court did not err in finding "cause" for conversion under § 1307(c)(1).

**2. Section 1307(c)(4)**

Under § 1307(c)(4), the bankruptcy court may convert a chapter 13 case to one under chapter 7 ". . . . for cause, including . . . (4) failure to commence making timely payments under [§] 1326 of this title." Section 1326, in turn, provides that "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan . . . in the amount . . . proposed by the plan to the trustee."

Debtor maintains that § 1307(c)(4) cannot be a basis for conversion of his case because he was current and timely on his plan payments. Debtor further asserts that he did not turn over the $3,224 to Trustee on the advice of counsel. In any event, Debtor contends that his failure to pay the $3,224 to Trustee does not matter since the PCM has no relation to § 1307(c)(4). These arguments fail.

Under § 1323 the debtor may modify the plan at any time prior to confirmation. After the debtor files a modification, "the plan as modified becomes the plan." § 1323(b). Therefore, the PCM required Debtor to make a payment of $3,224 to Trustee within forty-five days of his receipt of the inheritance. Debtor

-17-

does not dispute that he failed to make the payment as required by the PCM. The requirement to make plan payments under § 1307(c)(4) applies when a debtor commences making payments but then pays less than the plan requires. See In re Mallory, 444 B.R. 553, 558 (S.D. Tex. 2011) (citing In re Jenkins, 2010 WL 56003, at *2 (Bankr. S.D. Tex. Jan. 5, 2010) (finding cause for dismissal of a case in which the debtor commenced making the payments required in the proposed plan but paid an amount less than required)). Therefore, the bankruptcy court did not err in finding "cause" for conversion of Debtor's case under § 1307(c)(4).

**3.    Section 1307(c)(5)**

Under § 1307(c)(5), the bankruptcy court may convert a chapter 13 case to one under chapter 7 ". . . . for cause, including . . . (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan."

Debtor asserts that § 1307(c)(5) requires both a denial of confirmation and a denial of a request made for additional time to file another plan or modification of a plan. Debtor maintains that the bankruptcy court never denied his request for additional time to file a modified plan and thus this section does not apply.

Debtor correctly states that under § 1307(c)(5) two elements must exist to constitute "cause" for conversion: (1) denial of confirmation; and (2) denial of a request for time to file a new or a modified plan. In re Nelson, 343 B.R. at 675–76.

-18-

> We are persuaded that the second element of
> § 1307(c)(5) requires, at a minimum, that the court
> must afford a debtor an opportunity to propose a new or
> modified plan following the denial of plan
> confirmation. Because the court did not offer the
> debtor such an opportunity, the second element of
> § 1307(c)(5) was not satisfied. It follows that there
> was no 'cause' to dismiss or convert the chapter 13
> case under that authority." Id. at 676.

Here, Debtor "proposed" a modified plan following the denial of confirmation of his plan that proposed no payments to the unsecured creditors. This proposal was in a pleading filed in opposition to Trustee's motion for conversion and made orally at the conversion hearing. Although Debtor never affirmatively filed a modified plan, the bankruptcy court found that Debtor provided no evidence that his modified plan was feasible when his income would not support a 100% plan and the inheritance, which was the only source for 100% payment, was gone. While we held in Nelson that the Bankruptcy Code contemplates that chapter 13 debtors "be afforded more than one opportunity to confirm a Chapter 13 plan before the case is dismissed or converted following denial of plan confirmation," this does not mean the bankruptcy court must grant infinite second chances to a debtor when a modified plan fails confirmation standards on its face. See Nelson, 343 B.R. at 678. Any further continuance would have been futile. We thus conclude that the bankruptcy court applied the correct legal standards under § 1307(c)(5) and did not err in finding "cause" for conversion.

**C. Cause For Conversion: Bad Faith**

The bankruptcy court explicitly found that under the four factor test for determining bad faith set forth in Leavitt, two of the four factors were present: (1) whether the debtor

-19-

misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner and (2) the presence of egregious behavior.

On appeal, Debtor argues that he never misrepresented facts in his petition and plan. He valued his inheritance based on his estimate of its worth. Further, Debtor maintains that he gave notice to Trustee and the court of his intent to distribute the inheritance to his brothers and, once he realized the legal significance of the inheritance waivers in relation to bankruptcy law, he proposed a 100% plan and amended his schedules.

Debtor also contends that there was no egregious behavior. He filed his schedules in good faith, never concealed any assets, and disclosed the inheritance in his schedules. Debtor asserts that he "fully cooperated" with Trustee[5] at all times and any delay in amending his schedules was a direct result of his former attorney resigning from the Doan Firm. In short, according to Debtor, he acted in good faith throughout the entire process. Finally, Debtor argues that there was no testimony under oath and an evidentiary hearing and, thus, the bankruptcy court based its findings on speculation and assumptions.

In its bad faith analysis, the bankruptcy court opined that the facts here were very similar to those in Rosson and Marrama

---

[5] This contention is not supported by the record when Debtor failed to turn over the funds despite numerous requests by Trustee for him to do so. Furthermore, Trustee states in his responsive brief that Debtor was not forthcoming with information about the probate estate as all the information obtained was the result of Trustee's research and investigation.

v. Citizens Bank of Mass., 549 U.S. 365, 368 (2007). In Rosson, after filing a chapter 13 petition, Rosson assured the court and his creditors that he would soon be receiving several hundred thousand dollars in an arbitration award and that he would use that money to fund his proposed Chapter 13 plan. When the money finally came in, however, Rosson failed to deliver it to the chapter 13 trustee as the bankruptcy court had ordered him to do. Upon discovering that the arbitration proceeds had not been delivered to the trustee, the bankruptcy court found that Rosson was "rebelliously" "horsing around" with estate assets and, on its own motion, converted the chapter 13 case to one under chapter 7. Before the court filed the formal conversion order, Rosson invoked his right to voluntarily dismiss his chapter 13 petition under § 1307(b). The bankruptcy court denied the request for dismissal and converted the case and its decision was affirmed on appeal.

In Marrama, the debtor filed a chapter 7 case and misrepresented the value of his principal asset, a house in Maine, and also denied that he had transferred the property during the preceding year. Marrama later admitted that he transferred the property to a newly created trust for no consideration seven months prior to his filing to protect the property from his creditors. The chapter 7 trustee stated his intention to recover the Maine property as an estate asset. Thereafter, Marrama sought to convert the proceeding to chapter 13, but the trustee and respondent bank, Marrama's principal creditor, objected, contending that the request to convert was made in bad faith and would constitute an abuse of

-21-

the bankruptcy process. At the hearing on conversion, Marrama explained that his statements about the Maine property were attributable to "scrivener's error," and that he filed under chapter 7 because he was unemployed and now that he was employed he was eligible to proceed under chapter 13. The bankruptcy judge denied Marrama's request, finding under the totality of the circumstances he had acted in bad faith.

On appeal, Debtor attempts to distinguish his case from the bad faith conduct in Rosson and Marrama. Unlike Rosson, Debtor maintains there was no court order for the turnover of the inheritance funds. Moreover, unlike Rosson who failed to provide any explanation of what happened to the missing funds, Debtor maintains that he told the court at the July 8, 2014 hearing exactly how the funds were disbursed. Finally, unlike Marrama, Debtor maintains that he never lied to the court or took efforts to conceal what he had done. Rather, the spending and transfer of the inheritance took place with full disclosure.

We are not persuaded by these arguments. As an initial matter, the bankruptcy court properly considered the Leavitt four factors for determining bad faith which are simply tools in the bad faith totality of circumstances analysis. Thus, the bankruptcy court applied the correct legal standards and only its factual findings are at issue. We conclude there was no clear error in the bankruptcy court's finding of bad faith. In re Ellsworth, 455 B.R. at 914 (bad faith is a factual finding reviewed for clear error). The facts Debtor points to as evidence of his good faith as contrasted to those in Rosson and Marrama do not make the bankruptcy court's bad faith findings

clearly erroneous.

The bankruptcy court made numerous findings regarding Debtor's bad faith. The court found Debtor's failure to provide an accounting of the inheritance funds was bad faith as in Rosson. The court also considered Debtor's explanation for disbursing the funds to his brothers, but found that his explanation did not justify his actions when Trustee had made demands on Debtor to place the funds in Trustee's lockbox account or deposit the funds in his counsel's client trust account. The bankruptcy court's finding of bad faith derives further support from several inconsistencies in Debtor's disclosures. For example, the evidence showed that Debtor already had the proceeds from the sale of his father's house at the time he filed his schedules. Yet Debtor disclosed that he anticipated receiving only $2500 from the probate estate. There is no explanation in the record from Debtor as to how he came up with the $2500 number. Another example is that Debtor claimed his brothers were entitled to 75% of the inheritance but his brothers had filed waivers of their beneficial interests with the probate court. A fair inference from these inconsistencies is that Debtor wanted to withhold any non-exempt amount of the inheritance from his unsecured creditors.

Debtor also argues that the bankruptcy court's interpretation of the facts is incomplete and not persuasive evidence of bad faith because the court took no testimony and did not conduct an evidentiary hearing. We reject these contentions. Debtor neither requested an evidentiary hearing, nor has he identified what material facts are in dispute or what facts were

not before the bankruptcy court which would influence its decision. See Romley v. Sun Nat'l Bank(In re The Two "S" Corp.), 875 F.2d 240, 242 (9th Cir. 1989) (no purpose served by evidentiary hearing if all facts are before bankruptcy court and not disputed).

In short, the record shows that there was sufficient evidence before the bankruptcy court to support a finding of bad faith. In reality, Debtor's main complaint on appeal is that the bankruptcy court misinterpreted the evidence before it. However, when the evidence gives rise to competing interpretations, each plausible, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). In sum, the bankruptcy court relied on substantial evidence in the record when determining Debtor's bad faith, and its factual inferences were permissible.

**D.    Best Interests of Creditors And The Estate**

On appeal, Debtor argues that the conversion was not in the best interests of creditors and the estate because, had the case remained in chapter 13 with a 100% dividend, creditors would have been receiving payments since July 8, 2014. Debtor further asserts that conversion cannot be in the best interests of creditors since the inheritance has been eliminated as an asset of the estate under § 348(f), thereby rendering the chapter 7 case a "no asset" case. Last, Debtor maintains that upon dismissal, the creditors would have been free to immediately collect against him and their security. Now, they will never be able to collect due to the new "no asset" estate. In essence, Debtor's argument is that the creditors will fare worse under

-24-

chapter 7.

Once again, these arguments do not demonstrate error. When a case under chapter 13 is converted to a case under another chapter, "property of the estate of the converted case shall consist of all property of the estate as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion. . . ." § 348(f)(1)(A). Under this section, all non-exempt assets in the chapter 13 case would become property of the chapter 7 estate unless the debtor had authority to dispose of the asset, either by court order or pursuant to the Bankruptcy Code. Here, there was no court order authorizing Debtor to dispose of the property nor was Debtor's conduct authorized under the Bankruptcy Code. Moreover, § 348(f)(1)(A) "was never designed to be a safe harbor for Debtors who fraudulently and surreptitiously dispose of property of the estate while in chapter 13." Wyss v. Fobber (In re Fobber), 256 B.R. 268, 279 (Bankr. E.D. Tenn. 2000). There is also no evidence in the record that showed Debtor's unsecured creditors had any avenue for prompt payment if Debtor's case was dismissed. As a consequence, we fail to see how dismissal was more advantageous than conversion. Because the inheritance was a potentially valuable asset and appointment of a disinterested chapter 7 trustee would facilitate pursuit and possible recovery of that asset to pay creditors, it is axiomatic that conversion of Debtor's case was in the best interests of the creditors and the estate.

**E.    Absolute Right To Dismiss**

To the extent Debtor argues that he has an absolute right to

-25-

dismiss his case under § 1307(b) he is mistaken.  The Ninth Circuit in <u>Rosson</u> held that a chapter 13 debtor's right of voluntary dismissal under § 1307(b) was not absolute, but was qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad faith conduct or "to prevent an abuse of process."  545 F.3d at 774 (citing § 105(a)).

## VI.  CONCLUSION

Having found no error, we AFFIRM.