**In re David Maurice CRAIGHEAD, Debtor.**

No. 07–51596–ASW.

United States Bankruptcy Court, N.D. California.

Oct. 16, 2007.

---

**650**

David Maurice Craighead, San Jose, CA, pro se.

## MEMORANDUM DECISION DISMISSING CASE WITH REFILING BAR

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

Before the Court are the motions of the United States Trustee ("UST") and the Chapter 13 Trustee ("Trustee") to dismiss the bankruptcy case of Debtor David Mau-

rice Craighead ("Debtor") with a five-year refiling bar (collectively, "Motions"). The Motions were filed on June 11, 2007. The UST is represented by Shannon L. Mounger–Lum, Esq. Trustee is represented by E. Alexandra DeLateur, Esq. Debtor is appearing in *propria persona.* A hearing on the Motions was held on July 9, 2007. Instead of responding on the merits, Debtor faxed to this Court a document entitled *Objection to Illegal Motion by the U.S. Trustee and Request for Dismissal* ("Objection") on July 8, 2007, the day before the hearing.[1] The Objection was faxed to the UST and the Trustee on July 8, 2007 and served by mail on the same day on the Internal Revenue Service. The Objection was filed with the Court on July 11, 2007. Debtor did not appear at the hearing. At the request of the Court at the July 9, 2007 hearing, the UST and Trustee filed supplemental briefs in support of the Motions on July 19, 2007.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. After consideration of the Motions, the Objection and the supplemental briefs, and based on the evidence before the Court, the Court dismisses Debtor's bankruptcy case with a three-year refiling bar.

## I.

### FACTS

Debtor filed a voluntary Chapter 13 petition on May 29, 2007. This case was a

---

1. While Debtor's Objection requested immediate dismissal of his bankruptcy case, dismissal was not granted at the time. Bankruptcy Code § 1307(b) permits dismissal of a bankruptcy case at any time on the request of a debtor if a case has not been previously converted. Per Bankruptcy Rule 1017, such a request "shall be on motion filed and served as required by Rule 9013." Fed. R. Bankr.P. 1017(f)(2). This Court did not construe Debtor's Objection as such a motion, and Debtor's

bankruptcy request has not yet been dismissed.

Even if this Court had construed Debtor's Objection as a proper motion to dismiss his bankruptcy case under Bankruptcy Rule 1017(f)(2), this Court could have dismissed Debtor's bankruptcy case in July and retained jurisdiction to determine the request of the UST and the Trustee for a five-year re-filing bar. *In re Lawson,* 156 B.R. 43, 45–46 (9th Cir. BAP 1993).

skeleton filing—Debtor did not file any schedules, a Statement of Financial Affairs, a Means Test form, or a Chapter 13 plan. Debtor also filed a request to pay the filing fee in installments. The Court issued an order to show cause re dismissal on May 30, 2007, for Debtor's failure to file a Chapter 13 plan, schedules, a Statement of Financial Affairs, and a Means Test form. As noted above, the Motions were filed on June 11, 2007.

On June 13, 2007, Debtor filed a Chapter 13 plan and also requested a 45–day extension to file additional documents. On June 27, 2007, this Court granted Debtor's request for an additional 45 days from July 13, 2007, to file the additional documents. Debtor failed to appear at his Section 341 meeting of creditors on July 2, 2007. The Section 341 meeting of creditors was continued to July 16, 2007.

Previously, on March 26, 2007, Debtor had filed another skeletal chapter 13 case—*In re David Maurice Craighead,* 07–50856–ASW. Debtor also requested to pay the filing fee in installments in that case. Debtor's prior case was dismissed pursuant to the Court's Order to Show Cause on May 17, 2007, following Debtor's failure to file schedules, a Statement of Financial Affairs, and a Means Test Form.

Debtor filed the current case twelve days after the dismissal of his prior case.

The UST and Trustee argue that Debtor's actions are part of a concerted effort by his family to prevent a foreclosure of real properties located at 7871 Prestwick Circle, San Jose, California ("Prestwick Property"), and 7119 Via Portada, San Jose, California ("Via Portada Property"). The UST and Trustee contend that this bankruptcy petition is a continuation of the numerous transfers of real property and incomplete bankruptcy filings that have been generated by the Craighead family and Robert Helwig[2] since 1998. Debtor, Debtor's father Carlton Craighead, Debtor's mother Patricia Craighead, Debtor's brother Peter Craighead, and Robert Helwig have collectively filed at least twenty-two bankruptcy cases since 1998.[3]

Of the twenty-two bankruptcy cases, six have been filed by Debtor. Of the six cases filed by Debtor, five were dismissed prior to confirmation and the sixth is the current case. A chart of the various bankruptcy filings—including whether the filings were skeletal and whether the respective debtors requested that the filing fees be paid in installments—and the disposition of each, is set forth in the chart below. The six cases filed by Debtor are denoted by gray shading:

---

**2.** The Court has no information as to how, if at all, Robert Helwig is related to the Craighead family.

**3.** The Court takes judicial notice of all the filings pursuant to Fed.R.Evid. 201, made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 9017.

| | Ch | Case no. | Petition Date | Debtor | Type | Disposition |
|---|---|---|---|---|---|---|
| 1 | 13 | 98-59147 ASW | 11/12/98 | Carlton Craighead | Skeletal | Dism 12/15/98 -- no docs |
| 2 | 13 | 98-60170 JRG | 12/22/98 | Carlton Craighead | Skel/install | Dism 7/29/99 -- pre-conf |
| 3 | 13 | 99-54519 JRG | 07/02/99 | Robert Helwig | Skel/install | Dism 12/9/99 -- pre-conf |
| 4 | 7 | 99-54640 MM | 07/08/99 | Carlton Craighead | Skeletal | Discharge order 11/12/99 |
| 5 | 13 | 99-57750 JRG | 12/06/99 | Robert Helwig | Skel/install | Dism 6/12/00 -- pre-conf |
| 6 | 13 | 01-51763 JRG | 04/09/01 | Robert Helwig | Skel/install | Dism 8/10/01 -- pre-conf |
| 7 | 13/7 | 01-54572 JRG | 09/19/01 | Carlton Craighead | Skeletal | Discharge order 12/13/05 |
| 8 | 13 | 02-55558 ASW | 10/01/02 | Peter Craighead | Skel/install | Dism 11/6/02 -- no docs |
| 9 | 13 | 02-55569 ASW | 10/02/02 | David Craighead | Skel/install | Dism 11/13/02 -- no docs |
| 10 | 13 | 02-56751 ASW | 11/26/02 | Peter Craighead | Skel/install | Dism 1/24/03 -- no docs |
| 11 | 13 | 03-50057 ASW | 01/06/03 | David Craighead | Skel/install | Dism 2/10/03 -- no docs |
| 12 | 13 | 03-50971 ASW | 02/14/03 | Peter Craighead | Skel/install | Dism 4/10/03 -- no docs |
| 13 | 13 | 03-52383 ASW | 04/11/03 | David Craighead | Skel/install | Dism 5/22/03 -- no docs |
| 14 | 13 | 03-53805 JRG | 06/11/03 | David Craighead | Install | Dism 7/25/03 -- pre-conf |
| 15 | 13 | 03-54164 JRG | 06/28/03 | Peter Craighead | Skel/install | Dism 9/28/04 w/ 60 mo bar |
| 16 | 13 | 03-55846 JRG | 09/10/03 | Peter Craighead | Skel/install | Dism 10/10/03 -- no docs |
| 17 | 13 | 06-51924 RLE | 09/27/06 | Peter Craighead | Skel/install | Dism 9/29/06 -- no docs |
| 18 | 13 | 06-52226 RLE | 11/01/06 | Patricia Craighead | Skel/install | Dism 11/20/06 -- no docs |
| 19 | 13 | 06-52419 RLE | 11/28/06 | Patricia Craighead | Skel/install | Dism 6/17/07 w/ 24 mo bar |
| 20 | 13 | 07-50856 RLE | 03/26/07 | David Craighead | Skel/install | Dism 5/17/07 -- no docs |
| 21 | 13 | 07-51108 ASW | 04/18/07 | Patricia Craighead | Skel/install | Dism 6/9/07 -- no docs |
| 22 | 13 | 07-51596 ASW | 5/29/07 | David Craighead | Skel/install | Pending |

The UST asks the Court to take judicial notice of the *Objection to Motion to Dismiss and 2–year Bar to Re-filing* ("Objection to Two–Year Bar") filed on March 23, 2007, by Patricia Craighead, appearing in *propria persona* in *In re Patricia Craighead,* 06–52419–ASW. Debtor did not oppose the UST's request. The Court takes judicial notice pursuant to Fed.R.Evid. 201, made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 9017. Fed.R.Evid. 201 allows the Court to take judicial notice of its own records and proceedings. This judicial notice encompasses notice of the cases filed in the Court, the dockets of those cases, and the documents filed therein. The Objection to Two–Year Bar directly addresses the serial filings by members of the Craighead family and Robert Helwig and was filed in response to a similar motion to dismiss with a filing bar filed by the UST approximately two months before David Craighead filed the instant case. Based on the similarity of the issues, the closeness in time, and the fact that Debtor has failed to respond on the merits of the Motions, the Court takes judicial notice of the Objection to Two–Year Bar. The Objection to Two–

Year Bar provides the background of transfers and bankruptcy filings.

In her Objection to Two–Year Bar, Patricia Craighead stated that: "All the filings in question were done to protect two real properties from foreclosure: 7119 Via Portada, San Jose, CA, the personal residence of Debtor [Patricia Craighead] and Debtor's spouse [Carlton Craighead], and 7871 Prestwick Cir, San Jose, CA, an 1891 historic mansion that the Debtor's spouse has been trying to renovate and preserve since April, 1995." Objection to Two–Year Bar at 1:25–2:2. The Objection to Two–Year Bar also stated that the "[d]ebtor strongly believes her *civil rights to use the federal bankruptcy laws to save her personal residence* are being abridged and violated by the U.S. Trustee's motion to dismiss and bar to re-filing." (Emphasis added). Objection to Two–Year Bar at 2:3–5. The Objection to Two–Year Bar also explains that: (1) the nine bankruptcies filed from July 2, 1999 to February 14, 2003 (Numbers 3 –12 in the table above) were filed to protect the Prestwick Property; (2) Debtor [David Craighead] purchased the Via Portada Property for his parents in approximately the year 2000; and (3) the bankruptcies filed from April 11, 2003 to November 28, 2006 (Numbers 13–19 in the table above) were filed to save the Via Portada Property.

Since 1997, the Prestwick Property has been transferred between and among Robert Helwig, Evonne Helwig, Carlton Craighead, Peter Craighead, Theodore Gallis, and Debtor. Carlton Craighead and Peter Craighead currently hold title to the Prestwick Property as tenants in common. Since 2001, the Via Portada Property has been transferred between and among Peter Craighead, Patricia Craighead, Carlton Craighead, Robert Helwig, and Debtor. Robert Helwig currently holds title to the Via Portada Property.

The UST provided the Court with a declaration of Shannon L. Mounger–Lum and a transcript of a deposition of Carlton Craighead, taken during one of his personal bankruptcy cases on April 8, 2002 in *In re Carlton Craighead,* 01–54572–ASW. The Court takes judicial notice of the deposition transcript pursuant to Fed. R.Evid. 201, made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 9017. The deposition was taken under oath and discussed how and why Debtor briefly held title to the Prestwick Property from June 30, 2000 to September 19, 2001.

In his deposition, Carlton Craighead testified that he and various parties transferred property to each other for no consideration and for the express purpose of filing bankruptcy so as to prevent foreclosure on properties whose mortgages were delinquent. Specifically, Carlton Craighead testified as follows:

Q: So when you were Grant Deeded the 977 and 979 Prevost, did you pay money or any other kind of consideration for that property?

A: No, I didn't. I didn't pay any consideration. Like I said, it was a move to save this thing from going into foreclosure.... I took it because I knew I was going to file bankruptcy so that was going to at least hold that up until we could sort out what we were going to do.

Deposition of Carlton Bertram Craighead dated April 8, 2002 at 22:5–18. At another point in the deposition, Carlton Craighead testified that Debtor came to own the Prestwick Property because the purchasers of the Prestwick Property—Robert and Evonne Helwig—fell behind in the payments and filed for Chapter 13. Carlton Craighead testified that Evonne quitclaimed the Prestwick Property to Robert—and Robert Helwig subsequently transferred the Prestwick Property to

Debtor by grant deed. The deed granting the property to Debtor was recorded on June 30, 2000. Debtor received a second loan on the Prestwick Property since Robert Helwig could not qualify for a loan after filing his chapter 13 bankruptcy petition. According to Carlton Craighead, Debtor never paid any money for the acquisition of the Prestwick Property. When the Prestwick Property went into default in August of 2001, Debtor executed a grant deed to transfer the property to Carlton Craighead without any consideration so Carlton Craighead could then file for bankruptcy. The grand deed to Carlton Craighead was recorded on September 19, 2001. *Id.* at 36:16–37:21; 40:10–41:23.

Debtor, Robert Helwig, Carlton Craighead, Peter Craighead, and Patricia Craighead have all listed the Prestwick Property as their residence on all seventeen of their bankruptcy petitions from April 9, 2001 to the current petition on May 29, 2007 (Numbers 6–22 in the chart above). Even though Debtor listed the Prestwick Property as his residence, an internal investigation by the UST (uncontested by Debtor) indicates that Debtor's likely current address is in Rancho Cucamonga, California—not San Jose. Declaration of Brian M. Martinson filed in support of the Motion by the UST, ¶ 5.

There is already a 60–month refiling bar against Debtor's brother Peter Craighead imposed on September 28, 2004 in *In re Peter Craighead,* 03–54164–JRG. There is also a 24–month refiling bar against Debtor's mother Patricia Craighead, imposed on June 17, 2007 in *In re Patricia Craighead,* 06–52419–ASW.

## II.

### *ANALYSIS*

In the Ninth Circuit, bad faith constitutes cause for dismissal of a Chapter 13

case under § 1307(c) and constitutes cause for dismissal with prejudice under § 349(a). *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir.1999). Section 349(a) of the Bankruptcy Code states:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

The phrase "[u]nless the court, for cause, orders otherwise" in Section 349(a) authorizes the bankruptcy court to dismiss the case with prejudice. *Leavitt,* 171 F.3d at 1223. *See also In re Tomlin,* 105 F.3d 933, 937 (4th Cir.1997). "Cause" for dismissal under § 349 is not specifically defined in the Bankruptcy Code. For Chapter 13 cases, Bankruptcy Code sections 1307(c)(1) through (10) provide that the bankruptcy court may convert or dismiss, depending on the best interests of the creditors and the estate. *Leavitt,* 171 F.3d at 1224. Bad faith can constitute cause for dismissal under § 1307(c). *Id.* Bad faith is determined by the totality of the circumstances including the repeated filing of bankruptcy petitions without the balance of the schedules and plan. *In re Stober,* 193 B.R. 5 (Bankr.D.Ariz.1996); *In re Warren,* 89 B.R. 87 (9th Cir. BAP 1988).

Leavitt is the leading Ninth Circuit case on dismissal with prejudice. *Leavitt* sets forth certain factors to be considered in dismissing a case with prejudice:

> Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the "totality of the circumstances" test. The bankruptcy court should consider the following factors: (1) whether the debtor "misrep-

resented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner,"; (2) "the debtor's history of filings and dismissals,"; (3) whether "the debtor only intended to defeat state court litigation,"; and (4) whether egregious behavior is present. (Citations omitted). *Id.* at 1224.

■ Courts generally hold that when a debtor repeatedly files bankruptcy petitions and then repeatedly fails to file schedules or to comply with other requirements, this pattern of behavior is evidence of bad faith and an attempt to abuse the system. *Walker v. Stanley,* 231 B.R. 343 (N.D.Cal.1999). The Court can determine that a debtor filed a case in bad faith based on a pattern of conduct, and may impute bad faith from the timing and circumstances of the filings. *Walker,* 231 B.R. at 349; *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994); *In re Huerta,* 137 B.R. 356, 367 (Bankr.C.D.Cal.1992). Once the issue of bad faith is raised, it is the debtor's burden to prove his good faith. *In re Leavitt,* 209 B.R. 935, 940 (9th Cir. BAP 1997), *aff'd,* 171 F.3d 1219 (9th Cir.1999) (citing *In re Powers,* 135 B.R. 980, 997 (Bankr.C.D.Cal.1991)) (*"Leavitt II "*).

Debtor's position is that all the bankruptcy filings were all legal and there was never a finding of bad faith.[4] Debtor also seems to object to imputing the bankruptcy filings of other family members to Debtor. The UST and Trustee contend that Debtor and other family members have filed multiple bankruptcy cases in bad faith in an effort to hinder or delay creditors.

■ The Court finds that there is sufficient evidence to consider the multiple bankruptcy filings by Debtor and Debtor's family and Robert Helwig[5] in determining the totality of the circumstances regarding Debtor's bad faith. Various courts in similar circumstances have considered the filings and acts of family members and other real property titleholders when determining bad faith of a debtor. *See In re Kinney,* 51 B.R. 840, 845 (Bankr.C.D.Cal.1985) (finding that the actions of each family member in filing multiple bankruptcies could be imputed to the rest of the family for purposes of determining abuse of the bankruptcy system); *see also In re Feldman,* 309 B.R. 422, 427 (Bankr.E.D.N.Y. 2004) (imputing the non-filing spouse's prior abusive filings to the debtor in determining that the debtor's first case was filed in bad faith); *In re Wong,* 30 B.R. 87, 89 (Bankr.C.D.Cal.1983) (considering husband and wife's separate filings to determine abuse of the bankruptcy system).

Robert Helwig, Carlton Craighead, Peter Craighead, Patricia Craighead, and Debtor have filed seventeen bankruptcy petitions since 2001 using the Prestwick Property address as their residence. The evidence before this Court is that the Prestwick Property is a renovation project to restore a historic house, and that none of the above-named individuals who filed for bankruptcy actually resided in the property.

This bankruptcy petition appears to have been filed to prevent a foreclosure of

---

4. The Objection filed by Debtor the day before the hearing states in relevant part that: *"All the filings were 100% legal. All the real property transfers were 100% legal. Not one law was broken, and in all cases, there was never a finding of bad faith."* (Emphasis in original). Objection at 2:14–16.

5. The Court would find bad faith on Debtor's part whether or not Robert Helwig is a family member or had even filed for bankruptcy.

the Prestwick Property and/or Via Portada Property. Although Debtor does not hold title to either of the properties and the evidence submitted by the UST shows that Debtor does not live at either of the real properties, Debtor *listed* the Prestwick Property as his residence in the instant case, as Debtor, Robert Helwig, Carlton Craighead, Peter Craighead, and Patricia Craighead had each done in the previous sixteen bankruptcy petitions.

Furthermore, Carlton Craighead testified under oath that he and various parties transferred property to each other for no consideration for the express purpose of filing bankruptcy and preventing foreclosures on properties. Carlton Craighead also testified that a deed to the Prestwick Property was granted to Debtor from Robert Helwig on June 30, 2000, and transferred again to Carlton Craighead on September 19, 2001 for the purposes of filing bankruptcy. According to the testimony, this transfer occurred only to have Carlton Craighead file for bankruptcy because Debtor refused to file for bankruptcy. Carlton Craighead filed a skeletal petition on September 19, 2001, in *In re Carlton Craighead,* 01–54572–JRG.

Patricia Craighead also stated in her Objection to Two–Year Bar that all the bankruptcy filings in question were done to protect the Via Portada and Prestwick Properties from foreclosure. The Objection to Two–Year Bar implies that Patricia Craighead is under the misconception that there is an inherent civil right to use the bankruptcy laws to file multiple bankruptcy cases in order to save one's personal residence.[6] That is simply not the law.

This is the twenty-second bankruptcy case filed by this family and Robert Helwig since 1998. None of the twenty Chapter 13 cases has resulted in a confirmed plan, and all but one of the filings [7] were skeletal filings. The various debtors applied to pay the filing fee in installments in nineteen of the twenty-two cases. Only Carlton Craighead's chapter 7 cases were completed by the issuance of a discharge. The family members and Robert Helwig have managed to impose an automatic stay on creditors by filing multiple and serial bankruptcy petitions for over eight years. The UST and Trustee have had to expend significant resources monitoring and litigating the dismissal of those cases.

Even without considering the multiple bankruptcy filings of Debtor's other family members, there is sufficient cause to find bad faith based solely on the actions of Debtor alone. Under the totality of circumstances test under *Leavitt,* this Court should consider certain factors such as whether Debtor misrepresented facts in his petition, whether Debtor is unfairly manipulating the Bankruptcy Code, whether Debtor filed this bankruptcy petition in an inequitable manner, Debtor's history of filings and dismissals, whether this bankruptcy case was intended only to defeat state court litigation, and whether there has been any egregious behavior. Here this is Debtor's sixth bankruptcy case in the past five years. All but one of the six cases were skeletal filings. Debtor has also applied to pay all of his filing fees in installments. Of these six cases, five were dismissed prior to confirmation and the sixth is the current case pending; not one has been confirmed. This is also the second case filed by Debtor within the past

---

6. "Debtor strongly believes her *civil rights to use the federal bankruptcy laws to save her personal residence* are being abridged and violated by the U.S. Trustee's motion to dismiss and bar to re-filing." (Emphasis added). Objection to Two–Year Bar at 2:3–5.

7. *In re David Craighead,* 03–53805–JRG.

few months. Each bankruptcy petition listed Debtor's residence as the Prestwick Property. However, evidence shows that Debtor has not held any interest in this real property since November 22, 2002. The uncontested internal investigation by the UST indicates that Debtor's likely current address is Rancho Cucamonga, California. *See* Declaration of Brian M. Martinson filed in support of the Motion by the UST, ¶ 5.

Once the issue of bad faith is raised, Debtor has the burden to prove his good faith. *Leavitt II*, 209 B.R. at 940. Debtor has failed to meet his burden. Debtor's conduct shows a pattern of filing a case and failing to take the necessary steps to move the case forward. Debtor has failed to file schedules under penalty of perjury in this case and in all prior cases. Debtor has never appeared for a section 341(a) first meeting of creditors, so he has never been examined under oath. In short, Debtor has never come close to confirming a plan in any of his six bankruptcy cases.

Furthermore, in response to the Motions, Debtor asked the Court to dismiss *this* case in his Objection, filed the day before the hearing. Debtor failed to respond on the merits. Debtor failed to appear at the hearing as well. Debtor was given the opportunity to prove his good faith multiple times and Debtor has failed to rebut the bad faith allegation. Based on the facts before the Court, cause exists under the Ninth Circuit authority of *Leavitt* to dismiss this bankruptcy case and impose a refiling bar against Debtor. Dismissal is in the best interests of Debtor's creditors and Debtor's estate. Indeed, Debtor himself requests that the case be dismissed. A refiling bar is in the interests of Debtor's creditors, especially those creditors with a security interest in the properties Debtor has repeatedly attempted to block from foreclosure.

The Motions request a five-year refiling bar asserting that a five-year bar is needed to deter Debtor from engaging in further abusive filings. Bankruptcy Code section 349 gives the bankruptcy court authority to dismiss a bankruptcy case with a bar preventing a debtor from re-filing in cases of abuse. The Court agrees with the UST and Trustee that a bar to re-filing is appropriate in this case. However, the issue of the length of the bar is a matter for the Court's discretion. *See Leavitt*, 171 F.3d at 1226.

The Court has decided that a three-year refiling bar is appropriate in this case. While Debtor may have been under the misguided impression that he could use the Bankruptcy Code in the way that he did to block foreclosures on real properties in which Debtor and/or family members had an interest, this Memorandum Decision disabuses Debtor of any possible misunderstanding. This Decision holds that Debtor's conduct constitutes bad faith and an abuse of the Bankruptcy Code. Three years should also be sufficient for any creditors of the Debtor to take whatever actions they deem appropriate pursuant to state law.

## III.

### CONCLUSION

For the reasons set forth above, this Court grants the motions of both the UST and Trustee to dismiss Debtor's bankruptcy case, and imposes a three-year refiling bar. Counsel for the UST shall prepare a proposed form of order, serve it upon Trustee and Debtor, and submit it to the Court.