FILED

AUG 27 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MONNIE RAMSELL,<br><br>        Debtor. | BAP No. AZ-24-1033-LFC<br><br>Bk. No. 3:23-bk-08763-DPC |
| MONNIE RAMSELL,<br><br>        Appellant,<br>v.<br>EDWARD JOHN MANEY, Chapter 13<br>Trustee; WELLS FARGO BANK, N.A.,<br>As Trustee for Banc of America<br>Mortgage Securities Inc. Mortgage Pass-<br>Through Certificates, Series 2003-A,<br>        Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Daniel P. Collins, Bankruptcy Judge, Presiding

Before: LAFFERTY, FARIS, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Monnie Ramsell ("Debtor") appeals the bankruptcy court's order

dismissing her chapter 13[1] case for bad faith. After multiple filings by

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

1

Debtor and her husband, Craig E. Ramsell ("Craig"),[2] the bankruptcy court dismissed Debtor's most recent bankruptcy case with a one-year bar to refiling, finding that Debtor filed her petition in bad faith to delay foreclosure of Debtor's property. Through its dismissal order, the bankruptcy court also lifted the automatic stay and provided for *in rem* relief preventing the automatic stay from applying to Debtor's residential property in any bankruptcy case filed by any debtor with a claimed interest in the property.

We AFFIRM.

## FACTS[3]

### A. Prepetition Events

In 2003, Debtor and Craig executed a promissory note in favor of Bank of America, N.A. in the amount of $1 million (the "Note"). The Note was secured by a deed of trust recorded against Craig's and Debtor's real property located at 50 Bronco Lane, Sedona, Arizona 86336 (the "Bronco Property"). In 2014, Bank of America assigned the deed of trust to appellee Wells Fargo Bank, N.A. ("Wells Fargo").

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, "Civil Rule" references are to the Federal Rules of Civil Procedure, and references to "A.R.S." are to the Arizona Revised Code.

[2] For the sake of clarity, we refer to Craig by his first name. No disrespect is intended.

[3] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Subsequently, Wells Fargo filed a lawsuit against Craig and Debtor, among other defendants, in Arizona state court.[4] In 2021, the state court entered summary judgment in favor of Wells Fargo, quashing several notices recorded by Craig and Debtor against the Bronco Property and referring to such notices as "Fraudulent Notices." In its judgment, the Arizona court also declared that a non-judicial foreclosure of the deed of trust would divest Craig and Debtor from any claim of ownership in the Bronco Property.

Craig and Debtor appealed the judgment. Thereafter, the Arizona appellate court affirmed the trial court's judgment, holding:

> Through its attachments, Wells Fargo provided evidence that it had a lien interest in the property and that the Ramsells had recorded invalid notices to avoid foreclosure. Without contradictory evidence, the court correctly concluded the notices were invalid and subject to penalty under A.R.S. § 33- 420(A), declared Wells Fargo's lien interest in the property superior to the Ramsells' interest, and affirmed the effect of the foreclosure of the deed of trust under A.R.S. §§ 12-1831 and - 1101(A). And the Ramsells produced no evidence to challenge Wells Fargo's allegations and articulated no basis to dispute Wells Fargo's rights to the property or challenge its requested remedies. Nor do they here. Thus, we affirm the superior court's summary judgment.

---

[4] In her briefs, Debtor objects to references to her prior cases in state and bankruptcy court, arguing that such cases are not in the record. However, Debtor included the Arizona state court's summary judgment and the subsequent appellate decision as part of her record. We may take judicial notice of Debtor's and Craig's prior bankruptcy filings. *See In re Atwood*, 293 B.R. at 233 n.9.

*Wells Fargo Bank Nat'l Ass'n v. Ramsell*, No. 1 CA-CV 21-0190, 2021 WL 5457499, at *2 (Ariz. Ct. App. Nov. 23, 2021).

Approximately two months after the Arizona appellate court's affirmance, Debtor filed a chapter 13 petition (the "First Case"). In her schedules, Debtor identified her ownership interest in the Bronco Property and listed both Bank of America and Wells Fargo as secured creditors with claims Debtor indicated she disputed. Other than the disputed secured debt, Debtor identified a total of $995 in unsecured claims and a monthly net income of $1,312.

In connection with the First Case, Debtor objected to Wells Fargo's claim. Eventually, the bankruptcy court entered an order overruling Debtor's objection and dismissing Debtor's case.

In September 2022, approximately two months after dismissal of the First Case, Craig filed his own chapter 13 petition. Although Craig identified the Bronco Property in his schedule A/B, Craig did not identify any creditors with a security interest in the Bronco Property. Instead, in his schedule D, Craig indicated that Debtor, a co-owner of the Bronco Property, held a secured claim against the Bronco Property.

In his chapter 13 plan, Craig did not provide for treatment of any mortgage obligation. Rather, Craig indicated he would pay $10 per month to Debtor as a secured creditor of his estate. In response, Wells Fargo objected to Craig's proposed plan and moved to dismiss Craig's case. In April 2023, the bankruptcy court dismissed Craig's case.

**B.      Debtor's Latest Bankruptcy Filing and the Dismissal of Her Case**

On December 6, 2023, Debtor filed her most recent chapter 13 petition. Like Craig, although Debtor scheduled her ownership interest in the Bronco Property, Debtor did not identify any mortgage obligations in her schedule D. Instead, Debtor only identified Craig as a secured creditor.

In her schedule E/F, Debtor listed two unsecured creditors but indicated that the amount owed to them was unknown; she also stated that one of the unsecured claims was disputed. In her schedule J, Debtor stated that her monthly net income was $518.

Wells Fargo, in turn, filed a proof of claim asserting a $1,082,554.72 claim against the estate secured by the Bronco Property. In the proof of claim, Wells Fargo stated that Debtor and Craig owed $584,998.69 in unpaid arrears.

Eventually, Debtor proposed a chapter 13 plan. In the plan, Debtor did not provide for any claim based on a mortgage obligation. Instead, Debtor indicated she would pay $10 per month to Craig, again identifying Craig as a secured creditor.

Subsequently, the chapter 13 trustee (the "Trustee") filed a motion to dismiss Debtor's case for bad faith (the "Motion to Dismiss"). The Trustee asserted that Debtor: (i) falsely listed Craig as a secured creditor; (ii) failed to schedule any secured creditor with an interest in the Bronco Property despite having exhausted state court remedies challenging Wells Fargo's lien; (iii) did not have the income to fund a plan that cured the arrears

5

owed to Wells Fargo; and (iv) had collaborated with Craig to file multiple bankruptcy cases to avoid foreclosure of the Bronco Property. The Trustee requested dismissal of Debtor's case with a one-year bar to refiling imposed on Debtor, Craig, and any purported owner of the Bronco Property. The Trustee served copies of the Motion to Dismiss as well as notice of the hearing on the Motion to Dismiss on both Debtor and Craig.

Debtor opposed the Motion to Dismiss, mainly arguing that Wells Fargo did not have standing to assert a claim because it was not the proper holder of the note or deed of trust secured by the Bronco Property. Debtor also requested that the bankruptcy court take judicial notice of certain federal and state filings in support of her argument regarding Wells Fargo's standing. In her opposition, Debtor did not directly respond to the Trustee's concerns regarding her income or failure to schedule any mortgage obligations.

The bankruptcy court held a hearing on the Motion to Dismiss. During the hearing, Debtor again focused her argument on the theory that Wells Fargo lacked standing to assert a claim against Debtor. In response, the bankruptcy court noted that the record did not indicate that Debtor or Craig had ever paid off their mortgage obligation. As such, the bankruptcy court informed Debtor that, even if Wells Fargo was not the real party in interest, Debtor did not schedule, or propose treatment for the secured claim of, **any** creditor secured by the Bronco Property. Despite several invitations by the court for Debtor to explain why she would not identify in

her schedules, or provide treatment for in her proposed plan, an outstanding mortgage obligation, Debtor only argued that Wells Fargo did not have standing to assert a claim against the estate.

The bankruptcy court dismissed Debtor's bankruptcy case. In support of its dismissal, the bankruptcy court made the following findings:

> [Debtor]'s case was dismissed several years ago. Her husband, in a sense, tag-teamed with a new bankruptcy and bought some more time. His case, too, was dismissed. And now we're back with [Debtor], who filed this case on December 6th of 2023.
>
> Significantly, the Chapter 13 plan and the amended plan that have been filed by her reflect, essentially, a nominal payment to be in the plan, no payment whatsoever made to the lienholder against their home, whoever it may be. There's a lot of contention by [Debtor] that Wells Fargo is not the correct party-in-interest. But whether it's Wells Fargo or its assignee, one way or the other, the plan does not provide for anything more than essentially what was being provided in [Debtor's] last case, the case that was dismissed with prejudice.
>
> This case is a delay tactic. This case is filed in bad faith. And there is essentially no difference between the last case and this one and the plan submitted in this case.

Hr'g Tr., 16:7-24, Feb. 20, 2024.

With respect to the Trustee's request that the bankruptcy court bar any party with an interest in the Bronco Property from filing a petition for a period of one year, the bankruptcy court expressed concern that Craig had not received adequate notice of the Motion to Dismiss or properly appeared in Debtor's case. As an alternative to the Trustee's request, the

7

bankruptcy court instead suggested that it would provide *in rem* relief from the automatic stay.

Pursuant to its findings and conclusions at the hearing, the bankruptcy court entered an order dismissing Debtor's case (the "Dismissal Order"). In the Dismissal Order, the bankruptcy court held that: (i) Debtor is barred from filing a bankruptcy case under any chapter for a period of one year from entry of the Dismissal Order; (ii) the automatic stay is lifted from the Bronco Property; and (iii) the relief from automatic stay is binding and effective for a period of one year from entry of the Dismissal Order in any future bankruptcy case commenced by any debtors who claim an interest in the Bronco Property. Both Debtor and Craig were served with notice of the Dismissal Order.

On March 4, 2024, Debtor filed a motion for a stay of the Dismissal Order. While Debtor's motion was pending, the Bronco Property was sold to a third party.[5] On March 28, 2024, the bankruptcy court held a hearing on this motion. The minutes from that hearing reflect that, in light of the sale of the Bronco Property, Debtor conceded that her motion was moot. As such, the bankruptcy court denied the motion. Debtor timely appealed.

---

[5] In its brief on appeal, Wells Fargo contends that the Bronco Property was sold to EZ Homes, Inc. at a trustee's sale in accordance with Arizona law. According to Wells Fargo, the Trustee's Deed Upon Sale was recorded on March 28, 2024. Debtor does not dispute these facts.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction over the bankruptcy court's determination under 28 U.S.C. § 158.

## ISSUES

1. Is this appeal moot?

2. If this appeal is not moot, did the bankruptcy court err in dismissing Debtor's bankruptcy case?

3. If this appeal is not moot, did the bankruptcy court err in granting relief from the automatic stay as part of the Dismissal Order?

4. If this appeal is not moot, did the bankruptcy court err in providing *in rem* relief in the Dismissal Order?

## STANDARDS OF REVIEW

We assess de novo our own jurisdiction, including questions of mootness. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003). We review Article III standing determinations de novo. *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1098 (9th Cir. 2022). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

"We review the bankruptcy court's dismissal of a chapter 13 bankruptcy case for abuse of discretion, regardless of whether the court dismisses under any of the enumerated paragraphs of Section 1307(c), or

9

for bad faith." *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011) (citations omitted). "[W]hen a bankruptcy court makes factual findings of bad faith to support dismissal of a chapter 13 case, we review those findings for clear error. Under this standard, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Id.* (cleaned up).

We also review for an abuse of discretion a bankruptcy court's order granting relief from the automatic stay. *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 868 (9th Cir. BAP 2012).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

"We may affirm on any basis supported by the record." *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

### DISCUSSION

The Trustee and Wells Fargo contend that this appeal is moot because the Bronco Property was sold to a third party. However, as we

discuss in section A, it is not clear that Debtor no longer maintains any interest, such as a possessory interest, in the Bronco Property. Nevertheless, as we discuss in section B, the bankruptcy court did not abuse its discretion in dismissing Debtor's case with a one-year bar to refiling. As discussed in sections C and D, the bankruptcy court's inclusion of the stay relief provisions in the Dismissal Order was harmless error.

## A.    It is unclear if this appeal is moot.

"We cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014) (citations omitted). "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 677 F.3d 869, 880 (9th Cir. 2012) (quotation marks and citation omitted). If it cannot grant such relief, the matter is moot. *Id.* "The 'party moving for dismissal on mootness grounds bears a heavy burden.'" *Id.* (quoting *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003)).

The Ninth Circuit has "generally held that where an automatic stay is lifted, the debtor's failure to obtain a stay pending appeal renders an appeal moot after assets in which the creditor had an interest are sold." *Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1374 (9th Cir. 1987). In *Sun Valley Ranches*, the Ninth Circuit identified a "narrow exception to this rule, whe[n] real property is sold to a creditor who is a party to the appeal." *Id.* at 1375.

If an order provides *in rem* relief, a sale of the subject assets does not necessarily moot an appeal. If the debtor remains in possession of the property, the debtor "may possess an interest in the [p]roperty that could, in the absence of § 362(d)(4) relief, be protected by the automatic stay." *Benzeen Inc. v. JP Morgan Chase Bank (In re Benzeen Inc.)*, BAP No. CC-18-1097-TaLS, 2018 WL 6627275, at *4 (9th Cir. BAP Dec. 18, 2018) (citing *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1128–30 (9th Cir. 2016) (holding that, in California, it is not the foreclosure but the entry of unlawful detainer judgment and writ of possession that completely divests a debtor of all legal and possessory rights)). In such cases, the appeal would not be moot as to the *in rem* relief. *Id.*

The Trustee and Wells Fargo argue that this appeal is moot because the Bronco Property has been sold to a third party. As a preliminary matter, even if Debtor's appeal of the stay relief provisions in the Dismissal Order is moot, Debtor's appeal of the dismissal of her case with a one-year bar to refiling is not moot. If the Panel were to reverse the bankruptcy court's decision to dismiss Debtor's case, the Panel could simply mandate reinstatement of Debtor's case or remove the one-year bar to allow Debtor to file a new case. Thus, at least as to the dismissal of Debtor's case, this appeal is not moot.

It is unclear if Debtor's appeal of the stay relief provisions in the Dismissal Order is moot. If Debtor were appealing an order merely granting relief from the automatic stay under § 362(d)(1), appellees would

12

be correct that the doctrine of mootness would bar this Panel from reviewing the bankruptcy court's decision. The parties do not dispute that the Bronco Property was sold to a third party. As a result, if the only issue on appeal was the bankruptcy court's grant of relief under § 362(d)(1), the Panel would be unable to provide Debtor any effective relief.

However, the *in rem* provision in the Dismissal Order complicates the matter. The record is unclear regarding the status of any eviction proceedings against Debtor. In *Perl*, the Ninth Circuit held that, under California law, although a debtor's legal rights in real property were terminated after a third party purchased the property at a foreclosure sale and recorded the deed, the debtor may maintain a possessory interest that could be subject to the automatic stay. *In re Perl*, 811 F.3d at 1128-29. The Ninth Circuit held that, for purposes of California real property, any interest, including equitable or possessory, a debtor may have in real property terminated upon the issuance of an unlawful detainer judgment and writ of possession. *Id.* at 1129.

In Arizona, a debtor's legal rights to property are extinguished after the purchaser at a trustee's sale receives the trustee's deed upon sale. A.R.S. § 33-811(E). However, there appear to be no authorities similar to *Perl* that discuss the interplay of § 362 with an Arizona debtor's post-foreclosure possessory rights.

Nevertheless, it does appear Arizonans maintain some rights to possession after foreclosure. Under Arizona law, prior owners that remain

on the premises after a trustee's sale are considered "tenants in sufferance." *Grady v. Barth ex rel. Cnty. of Maricopa*, 312 P.3d 117, 120 (Ariz. Ct. App. 2013). To evict "tenants in sufferance," owners must provide written demand of possession. *Montano v. Luff*, 480 P.3d 669, 672 (Ariz. Ct. App. 2020) (citing A.R.S. § 12-1173.01(A)). After providing such notice, and assuming the "tenants in sufferance" remain on the premises, owners may initiate a forcible detainer action. *Grady*, 312 P.3d at 120.

A forcible detainer action is a "summary and speedy remedy for obtaining possession, and the only issue to be determined in the action is the right to actual possession." *Andreola v. Ariz. Bank*, 550 P.2d 110, 111 (Ariz. 1976). "[A] determination is final in an eviction action when it includes a judgment for the plaintiff or defendant for possession of the premises and resolves other issues such as damages, attorney's fees, and court and other costs." *Bank of N.Y. Mellon v. Dodev*, 433 P.3d 549, 555 (Ariz. Ct. App. 2018). Issues such as damages, attorney's fees, and costs are resolved through a writ of restitution under A.R.S. § 12-1178.

Therefore, Arizona's analog to California's unlawful detainer judgment and writ of possession appears to be issuance of the forcible detainer judgment and writ of restitution. A.R.S. § 12-1178. In addition, Arizonans have the right to appeal a forcible detainer judgment and obtain a stay of execution of the forcible detainer judgment pending appeal by posting a bond. *Grady*, 312 P.3d at 122; A.R.S. § 12-1182(B).

14

Here, the parties have not provided any information regarding whether the current owner of the Bronco Property has initiated eviction proceedings by sending a written demand to Debtor pursuant to A.R.S. § 12-1173.01(A), let alone whether any such eviction proceedings have concluded with a forcible detainer judgment and writ of restitution. Thus, it is unclear if Debtor maintains an interest in the Bronco Property.[6]

As noted above, a party requesting dismissal on the basis of mootness bears a heavy burden. *In re Thorpe Insulation Co.*, 677 F.3d at 880. Appellees have not supplemented the record in a manner sufficient to meet this heavy burden. Consequently, it is not clear that this appeal is moot.

## B. The bankruptcy court did not abuse its discretion in dismissing Debtor's case with a one-year bar to refiling.

Section 1307(c) allows courts to dismiss a bankruptcy case "for cause." *Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 339 (9th Cir. BAP 2015). The list set forth in § 1307(c) is nonexclusive. *Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 613 B.R. 537, 543 (9th Cir. BAP 2020). "Even though § 1307(c) does not explicitly mention it, the bad faith filing of a bankruptcy petition

---

[6] In her briefs, Debtor contends that she maintains an "Equitable Secured Interest" in the Bronco Property. Notwithstanding the fact that a security interest would not provide Debtor with an ownership or possessory interest, the Arizona appellate court already has determined that Debtor (and Craig) lack any such interest in the Bronco Property.

Debtor also contends that she maintains an interest in the Bronco Property because Craig has filed a proof of claim asserting a security interest in the Bronco Property. Once again, even if Craig had such an interest, which the Arizona appellate court has held he does not, the interest would not translate to an ownership or possessory interest in the Bronco Property.

15

also may constitute 'cause' for dismissal." *In re Ellsworth*, 455 B.R. at 915 (citing *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999)).

In determining if a petition was filed in bad faith, bankruptcy courts must review the "totality of circumstances." *Id.* at 917 (citation omitted).

> [W]hen considering dismissal of a chapter 13 case due to bad faith in its filing, a bankruptcy court should consider: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.

*Id.* at 917-18 (citing, *inter alia*, *In re Leavitt*, 171 F.3d at 1224).

> [Additional] characteristics of a bad-faith Chapter 13 case include the presence of few creditors, filing on the eve of a foreclosure sale or on the eve of some other litigation event in another court, the debtor's failure to meet deadlines for filing or amending the statement, schedules or the plan, the debtor's failure to attend the meeting of creditors or other hearings, a plan that proposes little payment to creditors, a plan that has no hope of confirmation and general lying, cheating or stealing by the debtor.

*Id.* at 918 n.11 (citation omitted).

"The bankruptcy court is not required to find that each [*Leavitt*] factor is satisfied or even to weigh each factor equally." *Khan v. Barton (In re Khan)*, 523 B.R. 175, 185 (9th Cir. BAP 2014). Rather, "[t]he *Leavitt* factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *Id.*

16

The bankruptcy court did not abuse its discretion in dismissing Debtor's bankruptcy case for bad faith. The record before the Panel amply supports the bankruptcy court's decision.

The bankruptcy court found that Debtor misrepresented facts in both her schedules and her proposed chapter 13 plan by indicating that she did not have any creditors with claims secured by the Bronco Property. Debtor's sole argument with respect to this finding, both before the bankruptcy court and this Panel, is that her omission was not a misrepresentation because she believes Wells Fargo does not have standing to assert a claim against Debtor's estate. However, as noted by the bankruptcy court, even if Wells Fargo is not the proper party in interest, Debtor did not schedule **any** mortgage obligation and did not provide for plan treatment of **any** claim secured by the Bronco Property (with the exception of proposing to pay $10 per month to her husband, Craig).

Debtor has not demonstrated that she does not owe a mortgage obligation at all.[7] Rather, Debtor has only argued that she believes Wells Fargo is not a proper party in interest and that no other secured creditor

---

[7] Before the bankruptcy court, Debtor briefly asserted that she did not have a mortgage obligation because she had tendered payment to Wells Fargo. In response, the bankruptcy court noted the Trustee's contention that the alleged "payoff" was Debtor's and Craig's submission of a fake instrument. At oral argument before this Panel, Debtor again alleged that she had tendered an instrument of payment, but did not clarify what type of instrument and did not respond to the Panel's inquiries regarding whether any funds were actually transferred from Debtor or Craig to Wells Fargo. As it stands, there is no indication that Debtor or Craig actually satisfied any of their mortgage obligations.

filed a proof of claim. Whether or not a secured creditor filed a proof of claim, however, Debtor had an obligation to accurately depict her assets and liabilities in her schedules. Nevertheless, the record demonstrates that she repeatedly filed schedules indicating that she did not owe a debt secured by the Bronco Property. Consequently, the bankruptcy court's finding that Debtor's sworn statements omitting a mortgage obligation qualified as misrepresentations made in bad faith was not clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.").

The bankruptcy court also noted Debtor's and Craig's history of filings and dismissals and found that Debtor's filing was a "delay tactic" meant to stall foreclosure of the Bronco Property. The record also supports these findings. Debtor and Craig filed three alternating chapter 13 petitions in a short period of time.[8] These filings occurred shortly after the Arizona appellate court affirmed a judgment in favor of Wells Fargo.

---

[8] In her briefs, Debtor disagrees with the bankruptcy court's interpretation of the repeated filings as evidence of bad faith because, she contends, her most recent filing came after discovery of new evidence regarding Wells Fargo's alleged lack of standing. However, the bankruptcy court applied the correct legal standard, and its inference that Debtor's and Craig's filings were evidence of bad faith is not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263. As such, even if Debtor disagrees with the bankruptcy court's interpretation, she has not articulated why the court's interpretation was an abuse of discretion.

Given that the bankruptcy court made findings regarding three of the four *Leavitt* factors,[9] which findings were not clear error, the bankruptcy court did not abuse its discretion in dismissing Debtor's case for bad faith.

Debtor's arguments before the Panel largely focus on her contention that Wells Fargo lacks standing to assert a claim against the estate. However, the bankruptcy court neither considered nor was required to consider the validity of Wells Fargo's claim in dismissing Debtor's case for bad faith. The bankruptcy court supported its dismissal of Debtor's case on the grounds highlighted above, i.e., Debtor's omission of **any** secured creditor in her schedules and plan, Debtor's and Craig's repeated filings, and the use of bankruptcy as a "delay tactic."

As a result, Debtor's arguments regarding the validity of Wells Fargo's claims are not properly before the Panel and are not relevant to this appeal. For the same reason, Debtor's contention that the bankruptcy court was required to take judicial notice of certain documents that would have bearing on the validity of Wells Fargo's claim also lack merit; such documents are not relevant to a determination regarding whether Debtor filed her petition in bad faith.[10] Thus, Debtor has not articulated any error in the bankruptcy court's decision to dismiss her case for bad faith.

---

[9] In her briefs, Debtor argues that the bankruptcy court should not have dismissed her petition for bad faith because it did not find the presence of egregious behavior. However, as noted above, the bankruptcy court need not find each *Leavitt* factor to dismiss a petition for bad faith. *See In re Khan*, 523 B.R. at 185.

[10] Debtor also argues that the Dismissal Order should be vacated under Civil

With respect to a bar to refiling, "[t]he decision to vary the § 349(a) effect of dismissal by imposing a condition . . . is reviewed for abuse of discretion." *Duran v. Gudino (In re Duran)*, 630 B.R. 797, 807 (9th Cir. BAP 2021) (citations omitted); *see also Kulick v. Leisure Vill. Ass'n, Inc. (In re Kulick)*, BAP No. CC-22-1114-FRL, 2022 WL 17848939, at *3 (9th Cir. BAP Dec. 16, 2022) (**"**[T]he bankruptcy court may 'dismiss a bankruptcy case with a bar preventing a debtor from re-filing in cases of abuse. . . . [T]he issue of the length of the bar is a matter for the Court's discretion.'" (quoting *In re Craighead*, 377 B.R. 648, 657 (Bankr. N.D. Cal. 2007))).

Although Debtor argues that the bankruptcy court should not have dismissed Debtor's case, Debtor is silent as to the bankruptcy court's imposition of a one-year bar to Debtor refiling a bankruptcy case. Debtor does not contend that the bankruptcy court's decision to impose the bar to refiling was an abuse of discretion. In addition, nothing in the record indicates that the bankruptcy court abused its discretion with respect to the one-year bar.

In light of the above, the bankruptcy court did not err in dismissing Debtor's petition for bad faith with a one-year bar to refiling.[11]

---

Rule 60(b)(3), made applicable in bankruptcy by Rule 9024. However, Debtor did not file a motion asking the bankruptcy court to vacate the Dismissal Order under Civil Rule 60(b) and, as a result, Debtor's request to the Panel is improper.

[11] Generally, "[d]ismissal under § 1307(c) is a two-step process. Once the court has determined that cause to dismiss exists, it still must decide what remedial action – what form of dismissal – should be taken." *In re Ellsworth*, 455 B.R. at 922. "[A] choice

**C.    The bankruptcy court's provision in the Dismissal Order granting relief from the automatic stay was harmless error.**

Debtor argues that the bankruptcy court improperly provided relief from the automatic stay because no party in interest had filed a motion requesting such relief. However, if this issue is not moot, any error in granting relief from the automatic stay was harmless error because dismissal of Debtor's case terminated the automatic stay. Thus, whether or not the court provided relief from the automatic stay, the automatic stay would not have been in effect at the time the Bronco Property was sold to a third party. As a result, the bankruptcy court's grant of relief from the automatic stay, even if improper, was harmless error.

**D.    The bankruptcy court's provision in the Dismissal Order providing *in rem* relief was harmless error as to Debtor.**

Pursuant to § 362(d), a court may provide relief from the automatic stay "[o]n request of a party in interest and after notice and a hearing . . . ."

> To obtain relief under § 362(d)(4), the court must find three elements to be present. First, debtor's bankruptcy filing must have been part of a scheme. Second, the object of the scheme must be to delay, hinder, or defraud creditors. Third, the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or

---

must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006) (citation omitted). Although the bankruptcy court did not explicitly state that dismissal, instead of conversion, was in the best interest of creditors, the record is clear that a chapter 7 liquidation would be futile. Debtor's sole significant asset is the Bronco Property, which has now been sold, and Debtor only scheduled two unsecured claims in amounts "unknown" as her only other liabilities.

court approval, or (b) multiple bankruptcy filings affecting the property.

*In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870. For purposes of *in rem* relief, the motion for relief must be initiated "by a creditor whose claim is secured by an interest in such real property. . . ." § 362(d)(4); *see also In re Ellis*, 523 B.R. at 679 (holding that a party seeking relief under § 362(d)(4) must establish that they have a secured interest in the subject property).

"The requirements of procedural due process apply to relief under Bankruptcy Code section 362(d)(4)." *Greenstein v. Wells Fargo Bank, N.A. (In re Greenstein)*, 576 B.R. 139, 167 (Bankr. C.D. Cal. 2017) (citing, *inter alia, In re First Yorkshire Holdings*, 470 B.R. at 871, *aff'd*, 589 B.R. 854 (C.D. Cal. 2018), *aff'd*, 788 F. App'x 497 (9th Cir. 2019)). Nevertheless, due process concerns are satisfied when, for instance, the owner of the property is given ample opportunity to argue against relief and appears at the hearing on the motion requesting relief. *In re First Yorkshire Holdings*, 470 B.R. at 871. Courts also have held that due process concerns are satisfied where a non-debtor owner of property is served with the motion requesting relief and notice of the hearing on the motion. *See, e.g., In re Dorsey*, 476 B.R. 261, 270 (Bankr. C.D. Cal. 2012); *Carpenter v. Mineta*, 432 F.3d 1029, 1036 (9th Cir. 2005) ("Due process requires notice and an opportunity to be heard.").

Here, although the Motion to Dismiss included a request to bar any owner of the Bronco Property from filing a bankruptcy petition for a period of one year, the Motion to Dismiss did not request *in rem* relief, did not

reference § 362(d)(4), and did not set forth the standard for obtaining relief under the statute. Moreover, as is evident by the plain language of the statute and as set forth by this Panel in *Ellis*, requests for *in rem* relief must be made by a creditor holding a security interest in the subject property. Here, a secured creditor did not file a motion requesting such relief.[12] Rather, the Trustee filed a motion requesting alternative relief, i.e., dismissal of Debtor's case with a one-year bar.

Finally, the bankruptcy court did not expressly make findings regarding the elements required for relief under § 362(d)(4). As such, the bankruptcy court's *sua sponte* order of *in rem* relief, which the bankruptcy court raised of its own accord for the first time at the hearing on the Motion to Dismiss, was error.

Nevertheless, because of the particular circumstances of this case, the bankruptcy court's grant of *in rem* relief was harmless error and did not violate the due process rights of either Debtor or Craig. As a preliminary matter, there are no authorities that suggest that a bankruptcy court's imposition of *in rem* relief outside the bounds of the statute is a jurisdictional error. Accordingly, the record does not present a jurisdictional defect that requires reversal.

---

[12] Although Wells Fargo appeared and was heard at the hearing on the Motion to Dismiss, it neither filed a motion requesting *in rem* relief nor filed a joinder to the Trustee's Motion to Dismiss.

With respect to Debtor, the court's error was harmless for the same reason the court's grant of stay relief was harmless. As discussed above, the Dismissal Order properly barred Debtor from filing a bankruptcy petition, and thus benefitting from the automatic stay, for a period of one year, i.e., the same amount of time the Dismissal Order imposed *in rem* relief. As a result, whether or not the court provided for *in rem* relief, Debtor would be unable to benefit from the automatic stay for one year after entry of the Dismissal Order. Furthermore, although the bankruptcy court did not explicitly find that the elements of § 362(d)(4) were satisfied, the findings made by the bankruptcy court likely would have supported entry of an *in rem* order; Debtor does not contend otherwise.

As far as this Panel can tell from the record, the only other party with an ownership interest in the Bronco Property was Craig. As stated above, the Trustee served Craig with a copy of the Motion to Dismiss and notice of the hearing on the Motion to Dismiss. The Motion to Dismiss included a request by the Trustee to bar Craig from filing a bankruptcy petition for one year. Although the request for a one-year filing bar is different from a request for *in rem* relief, in this case, the effect on Craig would have been the same – Craig would not be able to benefit from the automatic stay for a period of one year. In addition, Craig also was served with notice of the Dismissal Order, which indicated that if Craig (or any owner) filed for bankruptcy the automatic stay would not apply to the Bronco Property.

Despite the Trustee's request to affect Craig's right to file for bankruptcy, the record does not indicate that Craig appeared at the hearing on the Motion to Dismiss. Moreover, despite the notice of *in rem* relief sent to Craig, the record is devoid of any indication that Craig filed his own bankruptcy case and requested relief from the *in rem* provision, as he could have done pursuant to § 362(d)(4), which allows debtors impacted by *in rem* orders to "move for relief from such order[s] based upon changed circumstances or for good cause shown." Because Craig has not taken action to assert any rights he may have vis-à-vis the Bronco Property, there is no evidence of any prejudice suffered by Craig. *See In re Greenstein*, 576 B.R. at 168-69 (holding that inadequate notice of a request for *in rem* relief does not necessarily impact the validity of an order granting such relief because § 362(d)(4) provides owners an opportunity to request relief from *in rem* orders upon filing their own bankruptcy case).

The Panel does not endorse the bankruptcy court's approach. Given the strict and extremely limited application of § 362(d)(4) mandated by Congress, it was especially inappropriate for the bankruptcy court to have entered *in rem* relief *sua sponte* after raising the issue for the first time at the hearing on the Motion to Dismiss. *See In re First Yorkshire Holdings*, 470 B.R. at 871 (explaining the "serious implications" of an order granting relief under § 362(d)(4)). Nevertheless, because of the specific circumstances of this case and for the reasons set forth above, the bankruptcy court's order was harmless error. As a result, we must affirm.

**CONCLUSION**

The bankruptcy court did not err in dismissing Debtor's case for bad faith with a one-year bar to refiling. In addition, the bankruptcy court's provisions regarding relief from the automatic stay were harmless error. We therefore AFFIRM.